# STATE OF CONNECTICUT *v.* RALSTON E. SAMUELS
## (SC 16994)

Sullivan, C. J., and Palmer, Vertefeuille, Zarella and Tanzer, Js.

542

Argued October 25, 2004—officially released May 10, 2005

*Melissa L. Streeto,* deputy assistant state's attorney, with whom, on the brief, were *James Thomas,* state's attorney, and *Kimberly Perrelli,* senior assistant state's attorney, for the appellant (state).

*Jeanne M. Zulick,* special public defender, with whom, on the brief, was *Martin Zeldis,* chief of legal services, office of the chief public defender, for the appellee (defendant).

*Jon L. Schoenhorn* filed a brief for the Connecticut Criminal Defense Lawyers Association as amicus curiae.

*Opinion*

ZARELLA, J. The defendant, Ralston E. Samuels, was charged with four counts of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1)[1] and four counts of risk of injury to a child in violation of General Statutes (Rev. to 1999) § 53-21 (2).[2] A jury found the defendant guilty on all counts, and the trial court rendered judgment[3] in accordance with the jury

[1] General Statutes § 53a-71 (a) provides in relevant part: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and: (1) Such other person is thirteen years of age or older but under sixteen years of age and the actor is more than two years older than such person . . . ."

[2] General Statutes (Rev. to 1999) § 53-21 provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of a class C felony."

We note that the defendant was found guilty of four counts of risk of injury in connection with acts that had occurred between December, 1998, and January, 1999. Although the acts that had occurred in December, 1998, were covered by General Statutes (Rev. to 1997) § 53-21 (2) and the acts that had occurred in January, 1999, were covered by General Statutes (Rev. to 1999) § 53-21 (2), those two provisions are identical. In the interest of simplicity, we refer to the 1999 revision as the provision under which the defendant was convicted.

[3] The trial court sentenced the defendant to thirty years imprisonment, execution suspended after fifteen years, and ten years probation.

verdict. On appeal to the Appellate Court, the defendant claimed that the trial court improperly: (1) replaced a juror with an alternate by using a nonstatutorily sanctioned selection method; (2) allowed the state to amend its long form information after the jury was impaneled; and (3) admitted into evidence the testimony of four constancy of accusation witnesses based on out-of-court statements made by the victim after she had filed a complaint with the police. *State* v. *Samuels*, 75 Conn. App. 671, 674, 817 A.2d 719 (2003). The Appellate Court ·reversed the judgment of conviction and ordered a new trial on the ground that the four constancy of accusation witnesses should not have been permitted to testify and that the cumulative effect of the improperly admitted testimony deprived the defendant of his due process right to a fair trial under the United States constitution. Id., 689–90, 696. This conclusion having been dispositive of the appeal, the Appellate Court declined to review the first two claims advanced by the defendant. Id., 674.

We granted the state's petition for certification to appeal limited to the following questions: First, "[d]id the Appellate Court properly conclude that the trial court improperly admitted the testimony of four constancy of accusation witnesses?" *State* v. *Samuels*, 263 Conn. 923, 823 A.2d 1216 (2003). Second, "[i]f the answer to the first question is 'yes,' did the Appellate Court properly conclude that the admission of that evidence deprived the defendant of his federal constitutional due process right to a fair trial?" Id. We agree with the Appellate Court that the trial court improperly admitted the testimony of the four constancy of accusation witnesses. We do not agree, however, that the judgment of conviction should be reversed on the ground that the improper admission of that testimony rose to the level of a constitutional violation. Accordingly, we reverse the judgment of the Appellate Court.

A jury reasonably could have found the following facts. Prior to the start of the 1998–1999 school year, when S,[4] the victim, was thirteen years old, she went to live with her grandmother. The grandmother was partially blind and resided on the first floor of a three-story house, which she owned. S became acquainted with the defendant, who was twenty-four years old, because he rented an apartment in the basement of the house and frequently spent time with S and her grandmother.

In the early summer of 1999, a dispute arose between the defendant and the grandmother, ostensibly over an unpaid loan that the grandmother had made to the defendant. As a result of this and other disagreements, the grandmother asked the defendant to move out of the apartment. A former girlfriend of the defendant, who was helping him move, informed the grandmother that S had written letters to the defendant. Thereafter, the grandmother asked S's uncle to find out if anything inappropriate had occurred between S and the defendant. In response to her uncle's questions, S alleged that, on four separate occasions, she and the defendant had sexual intercourse.[5] S's mother immediately notified the police of the alleged sexual conduct between S and the defendant. The case subsequently was assigned to Officer Michael Kot, who interviewed S and her family and filed an official report on July 2, 1999.

[4] In accordance with General Statutes § 54-86e and our policy of protecting the privacy interests of victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained.

[5] In her initial report to the police, S alleged that the incidents took place between December, 1998, and February, 1999. S later testified at trial that there were ten to twenty incidents that took place between December, 1998, and June, 1999. Although the state filed an amended long form information that included the new dates, the information did not make direct reference to the additional incidents.

At trial, the state called seven constancy of accusation witnesses.[6] The defendant did not challenge the testimony of three of the witnesses[7] because their testimony was based on statements that S had made before she filed a complaint with the police. Four of the witnesses, namely, T, S's thirteen year old friend; B, S's high school civics teacher; H, S's high school volleyball coach; and Carole Mucha, S's therapist at The Institute of Living, gave testimony to which the defendant timely objected because T's testimony did not qualify as constancy of accusation testimony and the testimony of the other three witnesses was based on statements that S had made after she filed a complaint with the police. Elaine Yorden, a physician who conducted a medical examination of S, and Lisa Murphy, who interviewed S at the Aetna Foundation Children's Center of Saint Francis Hospital and Medical Center, also had provided testimony regarding S's sexual relationship with the defendant under the hearsay exception for statements pertaining to medical treatment or advice. See Conn. Code Evid. § 8-3 (5).

At the conclusion of the trial, a jury found the defendant guilty on all eight counts with which he was charged. The Appellate Court reversed the trial court's judgment of conviction and ordered a new trial. *State* v. *Samuels*, supra, 75 Conn. App. 696. This certified appeal followed.

I

The state first claims that the Appellate Court improperly determined that the trial court had abused its dis-

---

[6] The constancy of accusation witnesses included, in order of their encounter with S: T, S's friend; S's uncle; two police officers; S's therapist; and two of S's schoolteachers.

[7] The three witnesses whose testimony was not challenged were S's uncle, Officer Kot and Detective Naomi Cagianello. Cagianello's testimony was based on information that she had obtained after July 2, 1999, the date that S reported the incidents to the police. According to Cagianello, she received a report pertaining to S's complaint from the patrol division on July 7, 1999, and subsequently observed a videotaped interview of S on August 13, 1999,

cretion in permitting T, B, H and Mucha to testify as constancy of accusation witnesses pursuant to *State* v. *Troupe*, 237 Conn. 284, 677 A.2d 917 (1996), § 6-11 (c) of the Connecticut Code of Evidence and the public policy of our state. We disagree.

We begin our analysis with the applicable standard of review. "[T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . [E]videntiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Thompson*, 266 Conn. 440, 454, 832 A.2d 626 (2003).

In its decision, the Appellate Court discussed the history and underlying rationale of the constancy of accusation doctrine, which permits a person to whom a sexual assault victim has reported the alleged assault to testify regarding the fact and timing of the victim's complaint. *State* v. *Samuels*, supra, 75 Conn. App. 674–77; see *State* v. *Troupe*, supra, 237 Conn. 304. We need not repeat that discussion here, except to undertake a brief review of this court's holding in *Troupe*.

In *Troupe*, we determined that the constancy of accusation doctrine should be modified to better accommodate the interest of the victim in being protected "against the unwarranted, but nonetheless persistent, view that a sexual assault victim who does not report the crime cannot be trusted to testify truthfully about the incident"; *State* v. *Troupe*, supra, 237 Conn. 303; and the interest of the accused in being protected against "an enhanced risk that the jury may be unduly swayed by the repeated iteration of the constancy of accusation testimony." Id. We thus decided in *Troupe* to reject the then existing rule that a person to whom

conducted by Lisa Murphy of the Aetna Foundation Children's Center of Saint Francis Hospital and Medical Center, which performs diagnostic and forensic interviews and evaluations of victims of child sexual abuse.

a sexual assault victim has complained may provide substantive testimony regarding the incident. See id., 303–304. We specifically concluded: "[A] person to whom a sexual assault victim has reported the assault may testify only with respect to the fact and timing of the victim's complaint; any testimony by the witness regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge, including, for example, the time and place of the attack or the identity of the alleged perpetrator. In all other respects, our current rules remain in effect. Thus, such evidence is admissible only to corroborate the victim's testimony and not for substantive purposes. Before the evidence may be admitted, therefore, the victim must first have testified concerning the facts of the sexual assault and the identity of the person or persons to whom the incident was reported. In determining whether to permit such testimony, the trial court must balance the probative value of the evidence against any prejudice to the defendant.

"In addition, the defendant is entitled to an instruction that any delay by the victim in reporting the incident is a matter for the jury to consider in evaluating the weight of the victim's testimony." Id., 304–305.

Our modification of the constancy of accusation rule in *Troupe* was later codified in § 6-11 (c) of the Connecticut Code of Evidence, which provides: "A person to whom a sexual assault victim has reported the alleged assault may testify that the allegation was made and when it was made, provided the victim has testified to the facts of the alleged assault and to the identity of the person or persons to whom the assault was reported. Any testimony by the witness about details of the assault shall be limited to those details necessary to associate the victim's allegations with the pending charge. The testimony of the witness is admissible only

to corroborate the victim's testimony and not for substantive purposes." With this analytical framework in mind, we turn to the merits of the state's claim that the Appellate Court improperly determined that the trial court had abused its discretion in admitting the testimony of the four constancy witnesses into evidence.

A

The state claims that, although S testified that she merely told T that the defendant had considered her his "girlfriend," the jury could have drawn a reasonable inference from S's testimony that she and the defendant had a sexual relationship. The state thus argues that S's testimony regarding her conversation with T and T's subsequent testimony that S and the defendant "had sex" were proper under *Troupe* and § 6-11 (c) of the Connecticut Code of Evidence. We disagree.

As we previously noted, constancy of accusation testimony is admissible if the victim first testifies as to "the facts of the sexual assault and the identity of the person or persons to whom the incident was reported." *State* v. *Troupe*, supra, 237 Conn. 304–305; accord Conn. Code Evid. § 6-11 (c). A witness then may testify that he or she was a person to whom the victim reported the assault. In the present case, S initially testified about her sexual relationship with the defendant. She then testified that she told T that the defendant had considered her his "girlfriend." We agree with the Appellate Court that, "[a]lthough . . . testimony that qualifies as 'a report of the incident' need not contain magic words, or, even necessarily be a precise statement, it should, minimally, be a statement that a reasonable person would find to be relating an incident of sexual assault." *State* v. *Samuels*, supra, 75 Conn. App. 680–81. S's testimony does not meet that standard. The prosecutor asked S numerous questions regarding her conversation with T, and S declined to testify that she had described

her relationship with the defendant as sexual in nature. On cross-examination, S again declined to testify that she had characterized her relationship with the defendant as anything other than that of boyfriend and girlfriend during her conversation with T.

The simple declaration by S that she and the defendant were girlfriend and boyfriend, without more, cannot reasonably be viewed as a report by S that she and the defendant had a sexual relationship. Moreover, defense counsel's veiled reference to a sexual encounter when he used the word "incident" during his cross-examination of S failed to elicit a more detailed or descriptive response. T's testimony that S told her that she and the defendant "had sex" is irrelevant because the issue of whether S reported that she and the defendant had sex is determined solely on the basis of S's testimony and not on that of the constancy witness. See *State* v. *Troupe*, supra, 237 Conn. 304–305. Finally, the fact that statutory rape differs from traditional rape because the underage victim may have consented to the act does not alter the requirement that the victim must report to the constancy witness that the act was of a sexual nature. This did not occur in the present case. Consequently, S's testimony does not support the state's claim that she reported a sexual assault to T as required under *Troupe* and § 6-11 (c) of the Connecticut Code of Evidence. In light of the defendant's timely objection to T's testimony as a constancy of accusation witness, we agree with the Appellate Court that the trial court abused its discretion in admitting that testimony into evidence.

### B

The state next challenges the Appellate Court's conclusion that B, H and Mucha should not have been permitted to testify as constancy of accusation witnesses because S had disclosed her sexual relationship

with the defendant to each of those witnesses after she filed a complaint with the police. The state argues that the rules of evidence are to be liberally applied, the *Troupe* doctrine contains no express limitation as to the timing of a victim's complaint to a constancy witness, and a victim's complaint is relevant irrespective of when or to whom it is made. We are not persuaded.

In *Troupe*, we explained that the constancy of accusation doctrine had evolved from the "fresh complaint" rule, the purpose of which was "to negate any inference that because the victim had failed to tell anyone that she had been raped, her later assertion of rape could not be believed." (Internal quotation marks omitted.) Id., 296, quoting *State* v. *Hill*, 121 N.J. 150, 159, 578 A.2d 370 (1990). We further noted that " 'the "fresh complaint" doctrine allowed the prosecutor to introduce . . . evidence that the victim had complained soon after the rape. Its use thereby forestalled the inference that the victim's silence was inconsistent with her present formal complaint of rape. . . . In other words, evidence admitted under this doctrine effectively served as "anticipatory rebuttal," in that the doctrine often permitted the prosecutor to bolster the credibility of the victim before her credibility had first been attacked.' " (Citation omitted.) *State* v. *Troupe*, supra, 237 Conn. 296, quoting *State* v. *Kendricks*, 891 S.W.2d 597, 601 (Tenn. 1994).

*Troupe* thus affirmed that the historical roots of the constancy of accusation doctrine can be traced to the notion that, because a sexual assault victim is expected to report the crime soon after it occurs, the testimony of a victim who does not complain immediately is subject to attack. See *State* v. *Troupe*, supra, 237 Conn. 295. Once a sexual assault victim has reported the crime to the police, however, corroborative testimony by constancy witnesses that is based on postcomplaint conversations with the victim, even if relevant, no longer

serves the purpose of countering a negative inference as to the victim's credibility because it is the inconsistency between the victim's silence following the assault and her subsequent complaint to the police that gives rise to such an inference. See id., 296–97, citing *State* v. *Kendricks,* supra, 891 S.W.2d 601.

Moreover, permitting constancy witnesses to testify as to statements made by the victim after the filing of a complaint would not be in accord with this court's strict interpretation of the constancy of accusation doctrine established in *Troupe.* As the Appellate Court explained: *"Troupe* had the effect of *narrowing* the scope of the constancy of accusation doctrine as used in Connecticut. Most notably, it restricted the use of constancy testimony, allowing it for the sole purpose of corroborating the victim's testimony that a complaint had been made. [*State* v. *Troupe,* supra, 237 Conn.] 304. The court also narrowed the reasoning behind the doctrine, rationalizing that it now serves only to counteract a lingering, false assumption. '[T]he scope of our current doctrine is broader than necessary to protect against the unwarranted, but nonetheless persistent, view that a sexual assault victim who does not report the crime cannot be trusted to testify truthfully about the incident.' Id., 303. If the purpose of the doctrine is to combat stereotypes held by jurors regarding nonreporting victims, once a victim has officially reported the crime to the police, we do not believe any reasonable function can be further served by the admission of postcharge constancy testimony." (Emphasis added.) *State* v. *Samuels,* supra, 75 Conn. App. 684–85. For the foregoing reasons, and because the defendant timely objected to the postcomplaint testimony of B, H and Mucha, we conclude that the trial court abused its discretion in admitting their testimony into evidence.

The state cites *State* v. *Romero,* 59 Conn. App. 469, 475, 757 A.2d 643, cert. denied, 255 Conn. 919, 763 A.2d

1043 (2000), for the proposition that the timing of a victim's report to a constancy witness does not affect the admissibility of the witness' testimony, but only goes to its weight. We are not convinced. In *Romero*, the defendant, Jesus Romero, claimed that the trial court improperly had admitted the testimony of a constancy witness that was based on statements that the victim had made more than three years after the defendant first subjected her to sexual abuse and several months after he was charged with sexual assault in the first degree and risk of injury to a child. Id., 472–73. Thereafter, the Appellate Court concluded that the testimony of the constancy witness was "not inadmissible on the ground that the statements were made a long time after the victim first complained about the assault. . . . [W]hatever delay took place between the time of the attack and the time the victim first told witnesses of it does not affect the admissibility of the evidence, but merely presents a question of fact for the trier as to the weight to be given it." (Citation omitted; internal quotation marks omitted.) Id., 475. In reaching its conclusion, the court relied on an earlier case in which this court determined that the victim's "delayed report" to the constancy witness was not subject to exclusion on the ground that it had not been made at a "natural" time. (Internal quotation marks omitted.) Id., quoting *State* v. *Parris*, 219 Conn. 283, 291, 592 A.2d 943 (1991). The court thus did not base its conclusion on the fact that the victim's statements to the constancy witness were made after the defendant had been charged, as in the present case but, rather, on the fact that the statements had been made "a long time after the victim *first complained about the assault.*" (Emphasis added.) *State* v. *Romero*, supra, 475. Consequently, *Romero* did not address the issue before this court and cannot provide us with any meaningful guidance.[8]

---

[8] We also note that, even if *Romero* had addressed the precise question before this court, we are not bound by a decision of the Appellate Court.

The state nevertheless contends that, by restricting the testimony of constancy witnesses to persons to whom the victim has reported the crime before she files a complaint, the court will create a bright-line rule that will frustrate the purposes and policies underlying the constancy of accusation doctrine because victims of sexual assault will wait to file a complaint with the police until after they disclose the crime to others. This argument is without merit. It simply makes no sense to presume that a sexual assault victim would delay the filing of an official complaint solely for the purpose of rebutting a future negative inference at trial arising from the silence created by such a delay. It also is unlikely that the child victim of a sexual assault who ultimately comes to realize that she has been victimized would delay the filing of a complaint in anticipation of a favorable evidentiary ruling at trial, even if she knew that a delay might affect the proceedings.

The state contends that a new rule limiting constancy testimony to reports made by the victim to constancy witnesses before the filing of an official complaint would be rigid and unworkable because, given the myriad ways in which sexual assaults occur and are reported, it is not entirely clear what constitutes an "official" complaint to the police. We do not agree that it is difficult to determine when a complaint has been made to the police. Moreover, the state's concern is both speculative and irrelevant to the issue on appeal, and, therefore, we do not address it.

The state further contends that jurors view the testimony of child sexual assault victims with unfair skepticism because the testimony of children often is inconsistent, piecemeal, out of chronological order and incomplete due to their immaturity. See J. Myers, K.

E.g., *State* v. *Surowiecki*, 184 Conn. 95, 98, 440 A.2d 798 (1981) (this court is "not bound by a decision of a lower court").

Saywitz & G. Goodman, "Psychological Research on Children as Witnesses: Practical Implications for Forensic Interviews and Courtroom Testimony," 28 Pac. L.J. 3, 56–58 (1996). The state thus argues that no additional restrictions should be imposed on the use of constancy of accusation testimony when the sexual assault victim is a child. We decline to consider this claim. The age of the victim and other potential sources of juror bias are not relevant to our determination of the narrow issue before this court, namely, whether testimony based on postcomplaint reports that the victim has made to constancy witnesses should be admitted into evidence. Accordingly, we leave for another day the state's claim that the evidentiary rules pertaining to constancy testimony should be applied in a different manner when the sexual assault victim is a child.

The state claims, in the alternative, that if this court determines that the testimony of T, B, H and Mucha is not admissible under the constancy of accusation doctrine, T's testimony is admissible as a prior consistent statement, the testimony of B and H is admissible under the state of mind exception to the hearsay rule and Mucha's testimony is admissible under the medical treatment exception to the hearsay rule. We decline to consider this claim under our established rules of practice.

Practice Book § 63-4 (a) (1) provides in relevant part: "If any appellee wishes to (A) present for review alternate grounds upon which the judgment may be affirmed . . . that appellee shall file a preliminary statement of issues within twenty days from the filing of the appellant's preliminary statement of the issues. . . ." When the defendant appealed to the Appellate Court, the state failed to present alternative grounds for affirmance of the trial court's judgment. In responding to the defendant's Appellate Court brief, the state merely contended that: (1) the constancy of accusation doctrine did not

implicate the defendant's sixth amendment constitutional rights; (2) the introduction of the constancy testimony did not violate the defendant's constitutional right to a fair trial because the testimony fell within the parameters of *Troupe*; and (3) in any event, the defendant failed to show that the testimony in question affected the outcome of the trial. Accordingly, the state's failure to raise and to brief in the Appellate Court the issue of whether the disputed testimony could have been admitted into evidence under alternative theories prevented that court from considering the issue. Under these circumstances, we decline to consider the state's claim.

## II

The state next claims that, even if the testimony of the four constancy witnesses was improperly admitted into evidence, the Appellate Court incorrectly concluded, in response to the defendant's claim under *State v. Golding*, 213 Conn. 233, 567 A.2d 823 (1989), that the improper admission of the constancy evidence deprived the defendant of his due process right to a fair trial.[9]

Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is

---

[9] The defendant raised his constitutional claim under the fourteenth amendment to the United States constitution and article first, § 8, of the constitution of Connecticut for the first time on appeal to the Appellate Court. The claim was therefore subject to *Golding* review. The defendant also requested plain error review, but the Appellate Court determined that plain error analysis was inappropriate in light of the fact that it was the aggregation of the evidentiary errors that had led to the deprivation of the defendant's right to a fair trial. *State v. Samuels*, supra, 75 Conn. App. 688 n.24. On appeal, this court has been asked to consider the constitutional question only with respect to the defendant's due process rights under the federal constitution.

The fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) Id., 239–40. "The first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the defendant may prevail." (Internal quotation marks omitted.) *State* v. *Peeler*, 271 Conn. 338, 360, 857 A.2d 808 (2004). We agree with the Appellate Court's conclusion that the record was adequate for review. See *State* v. *Samuels*, supra, 75 Conn. App. 689. We do not agree, however, with the Appellate Court's conclusion that the defendant's claim was of constitutional magnitude alleging the violation of a fundamental right. See id., 693.

In *Troupe*, we explained: "[O]ur decision to modify the constancy of accusation doctrine [by limiting constancy testimony to the fact and timing of the victim's complaint] is based solely on policy considerations and not on constitutional grounds." *State* v. *Troupe*, supra, 237 Conn. 305. Our present decision to modify the doctrine further by precluding the admission of postcomplaint constancy testimony also is based on policy considerations. After the victim files a complaint with the police, there simply is no justification for a continuing negative inference regarding her credibility, and the need for postcomplaint constancy testimony thus disappears. Indeed, the admission of such testimony would unfairly bolster the victim's credibility at the defendant's expense. Accordingly, although we observed in *Troupe* that a defendant has an "interest in

not being unreasonably burdened by . . . accrediting or supporting evidence [in favor of the victim because] . . . there is an enhanced risk that the jury may be unduly swayed by the repeated iteration of the constancy of accusation testimony"; id., 302–303; we conclude that the interest of defendants in sexual assault cases in being protected from the prejudicial effect of postcomplaint constancy testimony is not constitutional in nature. Thus, the Appellate Court improperly determined that the defendant's claim satisfied the second prong of *Golding*. See *State* v. *Golding*, supra, 213 Conn. 239–40.

Nevertheless, the defendant maintains that a series of evidentiary errors can rise to the level of constitutional harm, his right to a fair trial was violated by the repeated iteration of unreliable hearsay from the four constancy witnesses and this harm was magnified by the failure of the trial court to instruct the jury that the testimony of B and H should be considered for corroborative purposes only and by the prosecutor's reliance on the improper testimony during closing argument. The law does not support this view.

We are aware of no case in which this court has characterized a defendant's claim of substantial prejudice due to the admission of cumulative or overlapping constancy testimony as constitutional in nature.[10] In *State* v. *Kelly*, 256 Conn. 23, 37, 770 A.2d 908 (2001), the defendant, Alex Kelly, claimed that the trial court had abused its discretion in permitting eight constancy

---

[10] That is not to suggest, however, that other constitutional claims involving constancy testimony cannot be made. In *Troupe*, we considered a claim by the defendant that the admission of constancy testimony violated his rights under the confrontation clause of the sixth amendment to the federal constitution and determined that the sixth amendment is not violated "*as long as the declarant is testifying as a witness and subject to full and effective cross-examination.*" (Emphasis in original; internal quotation marks omitted.) *State* v. *Troupe*, supra, 237 Conn. 292.

of accusation witnesses to testify for the state.[11] In our discussion of the standard for reviewing this claim, we stated: "It is a fundamental rule of appellate review of evidentiary rulings that *if [the] error is not of constitutional dimensions*, an appellant has the burden of establishing that there has been an erroneous ruling which was probably harmful to him." (Emphasis added; internal quotation marks omitted.) Id., 39. We then determined that the admission of the constancy testimony at issue was not harmful to the defendant in light of the fact that the state had relied at trial on substantial and detailed testimony regarding the sexual assault from other sources, including the victim herself and the physician who had examined her following the assault. Id., 39–40.

The defendant in *State* v. *Parris*, supra, 219 Conn. 293, likewise made a nonconstitutional claim that, by permitting four constancy of accusation witnesses to testify, the court had allowed the state to " 'bombard' " the jury with constancy testimony that substantially prejudiced his trial. We concluded that the court had not abused its discretion in admitting the testimony into evidence and noted that "care must be taken not to exclude [testimony] merely because of an *overlap* with evidence previously received. To the extent that evidence presents new matter, it is obviously not cumulative with evidence previously received." (Emphasis in original; internal quotation marks omitted.) Id. We observed that the overlapping testimony in *Parris* "related to the same incident . . . [and] pertained to a different statement that the victim had made to a different person at a different point in time. Rather than [being] prejudicially cumulative, therefore, the evidence

[11] The court determined that the state had called six constancy of accusation witnesses to testify, each of whom answered the same four questions regarding the fact and timing of the victim's complaint. See *State* v. *Kelly*, supra, 256 Conn. 37–38 & nn.10–11.

covered new matter by demonstrating, as was its relevant purpose, that the victim previously had reported the incident she described on direct examination in a constant and consistent fashion." Id., 294. *Kelly* and *Parris* thus demonstrate that claims of prejudice arising from cumulative or overlapping constancy testimony are not constitutional in nature and that the constancy testimony of multiple witnesses does not necessarily result in substantial prejudice to the defendant under the abuse of discretion standard.

"[M]erely placing a constitutional tag on a nonconstitutional claim does not make it so." (Internal quotation marks omitted.) *State* v. *McIntyre*, 242 Conn. 318, 329, 699 A.2d 911 (1997). Even if postcomplaint constancy testimony is considered inadmissible because it no longer is necessary as "anticipatory rebuttal" to counter a negative inference regarding the victim's credibility; see *State* v. *Troupe*, supra, 237 Conn. 296; we have held that the admission of evidence that is either irrelevant or impermissible hearsay is not an error of constitutional dimension. See *State* v. *McIntyre*, supra, 329. Furthermore, the intrinsic character of postcomplaint constancy testimony is identical to that of properly admitted constancy testimony because all constancy testimony is limited to the fact and timing of the victim's complaint. See *State* v. *Troupe*, supra, 304. Accordingly, there is no distinctive quality attached to postcomplaint constancy testimony, other than its possible status as inadmissible hearsay, that enhances its potential to substantially prejudice the defendant.

The defendant compares the present case to cases involving prosecutorial misconduct in which this court has found that multiple errors on the part of the prosecutor have deprived the defendant of his constitutional right to a fair trial. See, e.g., *State* v. *Ceballos*, 266 Conn. 364, 832 A.2d 14 (2003) (four instances of prosecutorial misconduct deprived defendant of his due process right

to fair trial); *State* v. *Singh*, 259 Conn. 693, 723–25, 793 A.2d 226 (2002) (same). These cases are inapposite.

A prosecutor has unique responsibilities in our judicial system. E.g., *State* v. *Ceballos*, supra, 266 Conn. 376. "A prosecutor is not only an officer of the court, like every other attorney, but is also a high public officer, representing the people of the State, who seek impartial justice for the guilty as much as for the innocent. . . . By reason of his [or her] office, [the prosecutor] usually exercises great influence upon jurors. [The prosecutor's] conduct and language in the trial of cases in which human life or liberty are at stake should be forceful, but fair, because he [or she] represents the public interest, which demands no victim and asks no conviction through the aid of passion, prejudice or resentment. If the accused [is] guilty, he [or she] should [nonetheless] be convicted only after a fair trial, conducted strictly according to the sound and well-established rules which the laws prescribe." (Internal quotation marks omitted.) Id., 376–77.

Furthermore, "[i]t is not the prosecutor's conduct alone that guides [the] inquiry, but, rather, the fairness of the trial as a whole." (Internal quotation marks omitted.) Id., 376. "To prove prosecutorial misconduct . . . the defendant must establish that the trial as a whole was fundamentally unfair and that the misconduct so infected the trial with unfairness as to make the conviction a denial of due process." (Internal quotation marks omitted.) Id. Thus, a trial court's improper evidentiary rulings on the admissibility of constancy testimony lack the same potential for constitutional harm as the improper conduct of a prosecutor because, unlike a prosecutor, the court is not an advocate. Indeed, it is the duty of the court to ensure that the proceedings are conducted in an impartial manner according to the law. Additionally, evidentiary rulings regarding constancy testimony are less likely to affect the trial as a

whole than the conduct of a prosecutor who examines witnesses throughout the trial and makes arguments to the jury. Consequently, cases involving prosecutorial misconduct are not analogous to the present case.

The defendant finally argues that the harm arising from the aggregation of improper constancy testimony in the present case was accentuated by the trial court's failure to instruct the jury that the testimony of B and H should be considered for corroborative purposes only and not for the truth of the matter asserted, and by the prosecutor's reference to the improperly admitted testimony during closing argument. The defendant did not object to the jury instructions or to the prosecutor's closing argument at trial. We reject the defendant's attempt to create a claim of constitutional magnitude by bootstrapping unpreserved claims of instructional error and prosecutorial misconduct onto his claim regarding the improper admission of constancy testimony. Accordingly, we conclude that the Appellate Court incorrectly determined that the defendant had satisfied the second prong of *Golding*.

### III

The defendant asserts as alternative grounds for affirmance[12] of the Appellate Court's judgment that: (1)

[12] Practice Book § 84-11 provides in relevant part: "(a) Upon the granting of certification, the appellee may present for review alternative grounds upon which the judgment may be affirmed provided those grounds were raised and briefed in the appellate court. Any party to the appeal may also present for review adverse rulings or decisions which should be considered on the appeal in the event of a new trial, provided that such party has raised such claims in the appellate court. If such alternative grounds for affirmation or adverse rulings or decisions to be considered in the event of a new trial were not raised in the appellate court, the party seeking to raise them in the supreme court must move for special permission to do so prior to the filing of that party's brief. Such permission will be granted only in exceptional cases where the interests of justice so require.

"(b) Any party may also present for review any claim that the relief afforded by the appellate court in its judgment should be modified, provided such claim was raised in the appellate court either in such party's brief or upon a motion for reconsideration.

the improperly admitted testimony of any one of the four constancy witnesses, considered independently, was sufficient to constitute reversible error; (2) the improperly admitted constancy testimony deprived him of his constitutional right of confrontation; and (3) the trial court improperly replaced an alternate juror by order of selection and not by lot as mandated by statute. We consider each of these claims in turn.[13]

## A

The defendant first claims that the improperly admitted testimony of any one of the four constancy witnesses, standing alone, was sufficiently prejudicial to constitute reversible error. See, e.g., State v. Thompson, supra, 266 Conn. 454. We disagree.

The following relevant facts are necessary to our resolution of this issue. At trial, T testified that S had told her at a Valentine's Day party in February, 1999, that she and the defendant were boyfriend and girlfriend and had engaged in sexual intercourse in the defendant's apartment when S's grandmother was not home. B subsequently testified that, during the 1998–1999 school year, S became visibly upset and left his classroom while he was showing his students a film depicting the kidnapping and rape of a child. One week later, when B asked S why she had become so upset, she

"(c) Any party desiring to present alternative grounds for affirmance, adverse rulings or decisions in the event of a new trial or a claim concerning the relief ordered by the appellate court shall file a statement thereof within fourteen days from the issuance of notice of certification. . . ."

[13] We deem the defendant's Appellate Court claim regarding the state's amendment of its long form information after the jury was impaneled; see State v. Samuels, supra, 75 Conn. App. 672; as abandoned because the defendant did not raise that claim as an alternative ground for affirmance on appeal to this court. See, e.g., Pomazi v. Conservation Commission, 220 Conn. 476, 477–78 n.3, 600 A.2d 320 (1991) (issue that trial court found unnecessary to reach in administrative appeal deemed abandoned on appeal to this court when party failed to brief it as alternative ground for affirmance of trial court's judgment).

replied, without identifying the defendant, that "something similar [had] happened to her . . . ." H testified that when she encountered S crying in the hallway outside of B's classroom, S described a scene in the movie that made her "very uncomfortable" and said that the scene was "very personal to her." S then disclosed what had happened to her but referred to the defendant as a "family friend," and not by name. Mucha, S's therapist, testified that S told her that the defendant had sexually assaulted her four times in December, 1998, and January, 1999.

Although the testimony of the four constancy witnesses was improperly admitted into evidence, we nonetheless conclude that in no case did the testimony of the individual witnesses substantially prejudice the defendant. The testimony of each witness was relatively brief and was similar in kind to that of the three constancy witnesses whose testimony was not challenged.[14] Additionally, the disputed testimony was not admitted for substantive purposes and did not include a detailed or explicit description of S's sexual encounters with the defendant. Furthermore, B and H did not identify the defendant as the perpetrator, although the jury may have inferred that fact on the basis of their testimony. In addition, the prosecutor made only fleeting references to the improper testimony during closing argu-

[14] These three constancy witnesses were S's uncle, Officer Kot and Detective Naomi Cagianello. S's uncle testified that S told him that she had had sexual intercourse with the defendant four times, "twice downstairs and twice upstairs." Kot, who responded to the report of sexual assault, testified that S told him during their interview that she had had sexual intercourse with the defendant downstairs on four occasions when no one else was home between December, 1998, and February, 1999. Cagianello testified that she received the official report of the sexual assault involving S in which S had reported that "a family friend had sexually assaulted her." Cagianello also testified that, during the course of the police investigation, she had determined that the defendant was twenty-four years old at the time of the assaults and that the assaults had taken place in the basement of the house where S lived with her grandmother.

ment. Lastly, the state's case against the defendant was strong because substantial and detailed testimony regarding the assaults was provided by other witnesses, including the victim herself and the physician who had examined her after she reported the crime to the police. See, e.g., *State* v. *Kelly*, supra, 256 Conn. 40 (testimony of eight constancy of accusation witnesses was not improper because state relied on substantial testimony regarding assault from other sources).

S, the first witness to take the stand, provided a graphic description of her sexual encounters with the defendant and testified that she and the defendant had written letters to each other discussing these encounters. Murphy, who performed a diagnostic interview of S at Saint Francis Hospital and Medical Center, later testified that S had disclosed that she and the defendant had had sexual intercourse on four separate occasions and that the incidents had taken place in the defendant's basement apartment in December, 1998, and January, 1999. Yorden provided substantial testimony regarding S's medical history, which she had obtained during an interview with S, her mother and her maternal grandmother. Yorden also provided a detailed description of her medical findings based on her physical examination of S. These findings were consistent with S's testimony that she had had sexual intercourse with the defendant. Additional evidence was provided by three constancy of accusation witnesses whose testimony was not challenged. Accordingly, the state's case against the defendant was strong even without the improperly admitted testimony of the four constancy witnesses. We therefore agree with the Appellate Court that reversal of the defendant's conviction based on the testimony of any one of the four constancy witnesses, standing alone, is not warranted. *State* v. *Samuels*, supra, 75 Conn. App. 687–88; see, e.g., *State* v. *Thompson*, supra, 266 Conn. 454.

The defendant maintains that B and H "testified that S likened what happened to her to a violent gang rape" that was not similar to the alleged crimes in the present case. The defendant thus contends that the testimony of B and H was particularly damaging because it was clearly outside the parameters set forth in *Troupe*. This claim is without merit.

B and H did not testify that S painted herself as the victim of a violent gang rape. B testified that he showed a film to his students about a child who had been kidnapped and raped by two men, and that S later explained that "something similar [had] happened to her . . . [and that] *this person* that did this to her was about to receive bail or about to get out or something like that." (Emphasis added.) H testified that S reported that a scene in the movie had made her feel "very uncomfortable" because the scene was "very personal to her." H testified further that S then described to her what had happened with the defendant, whom S portrayed as a "family friend." Although it is true that the testimony of B and H supported the conclusion that S and the defendant had engaged in sexual activity, B and H also testified that S had referred to the perpetrator as an individual rather than a gang. Furthermore, neither witness referred to graphic and violent details inconsistent with S's testimony. Consequently, we conclude that the testimony of either B or H did not result in substantial prejudice to the defendant. See *State* v. *Kelly*, supra, 256 Conn. 39–40.

The defendant finally argues that the lack of a limiting instruction expressly identifying B and H as constancy witnesses multiplied the harm caused by the evidentiary impropriety relating to those two witnesses because the jury was likely to have considered their testimony for the truth of the matter asserted.[15] As we noted pre-

---

[15] We note that, in his closing argument, the prosecutor referred to the testimony of B and H as constancy evidence.

viously, the defendant did not object to the jury instructions at trial, and the claim of instructional error with respect to B and H is, therefore, improper. See Practice Book § 60-5.

## B

We next consider the defendant's claim that the improperly admitted constancy testimony deprived him of his constitutional right of confrontation under the sixth amendment to the United States constitution[16] and article first, § 8, of the constitution of Connecticut.[17] The defendant contends that he was not afforded an opportunity for full and complete cross-examination of S with respect to the constancy testimony of T, B, H and Mucha because S had denied discussing her alleged sexual relationship with the defendant with any of those witnesses. The defendant did not preserve this claim at trial and now seeks review under *State* v. *Golding*, supra, 213 Conn. 239–40. We conclude that the record is adequate for review but that the defendant's claim must fail under the second prong of *Golding* because it is not of constitutional magnitude alleging the violation of a fundamental right.

S testified on direct examination that she had told T that the defendant was her boyfriend. S also testified that she had told Mucha about her relationship with the defendant. S further testified that, although she had not discussed her relationship with the defendant with anyone at school, she had asked one of her teachers, namely, B, whom she did not identify by name, a question and "I guess he considered . . . that I was talking

---

[16] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."

[17] Article first, § 8, of the constitution of Connecticut provides in relevant part: "In all criminal prosecutions, the accused shall have a right . . . to be confronted by the witnesses against him . . . ."

about myself . . . [b]ecause we were watching a movie that had to do with the same thing."

On cross-examination, S testified that she had not told T anything more than that the defendant was her boyfriend. S also testified that she had told her teacher, presumably B, whom she did not identify by name, that she had sexual contact with the defendant. Additionally, S testified that she had spoken to both her physician and her therapist about her relationship with the defendant. S was not asked any questions during direct or cross-examination about H, although prior to the start of the evidence, the prosecutor identified B and H as two of S's teachers whom the state might call as constancy witnesses.

In its opinion, the Appellate Court noted that *Troupe* made clear that the admission of constancy testimony does not violate the confrontation clause of the sixth amendment. *State* v. *Samuels*, supra, 75 Conn. App. 689 n.26. The court then observed that three of the four constancy witnesses should not have been permitted to testify because their testimony was based on post-complaint reports by the defendant. Id., 689–90 n.26. The court concluded that a constitutional violation generally does not exist when hearsay is admitted and is safeguarded properly by the presence of the declarant at trial. Id. The court stated that such violations arise primarily from impermissible restrictions on cross-examination of the declarant. Id., citing *State* v. *Santiago*, 224 Conn. 325, 331–32, 618 A.2d 32 (1992). The Appellate Court thus determined that, because S was available in the present case and the court imposed no restrictions on defense counsel in cross-examining her, there was no violation of the defendant's constitutional right to confront his accuser. *State* v. *Samuels*, supra, 689–90 n.26.

It is a fundamental tenet of confrontation clause jurisprudence that "the clause is not violated by admitting

a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination." (Internal quotation marks omitted.) *State* v. *Troupe,* supra, 237 Conn. 292. We also have determined that, "[b]ecause constancy of accusation evidence is not admissible unless the victim has testified, and is subject to cross-examination . . . concerning the crime and the identity of the person or persons to whom the victim has reported the crime," the admission of constancy of accusation testimony does not violate the sixth amendment. Id., 293.

Applying these principles to the present case, we conclude that the defendant's claim must fail under the second prong of *Golding* because it is not of constitutional magnitude alleging the violation of a fundamental right. As we stated in *Troupe,* the admission of constancy of accusation testimony does not rise to the level of a constitutional violation. Id. Contrary to the defendant's contention, S specifically identified T, B and Mucha as individuals with whom she had conversations about her relationship with the defendant. S testified that when she spoke with T about the matter, she had described the defendant as her boyfriend. If defense counsel had believed that S's description of the relationship was insufficient to justify the admission of T's testimony as a constancy witness, counsel could have availed himself of the opportunity to cross-examine S in order to establish that T did not qualify as a constancy witness. His failure to pursue that course was a matter of choice. Defense counsel also was aware that the state would call B and Mucha as constancy witnesses because the prosecutor had queried S about her conversations with those witnesses on direct examination. Indeed, defense counsel subsequently elicited additional testimony from S about her conversations with B and Mucha on cross-examination. Although S did not testify as to her conversation with H, the prosecutor

notified the court prior to the start of the evidence that B and H might be called as constancy witnesses. Defense counsel thus had notice as to the possible testimony of H and could have questioned S more closely about her conversations with B and H when he asked her about the film at school that had caused her to become so upset. Furthermore, the defendant has not established that his counsel's failure to cross-examine S in more detail about her conversations with B and H deprived him of his right to a fair trial. If defense counsel was concerned, he could have cross-examined B and H or objected to their testimony on sixth amendment grounds. He did neither. Accordingly, we conclude that the defendant's confrontation clause claim must fail under the second prong of *Golding*.

## C

We now consider the defendant's claim that the trial court improperly selected an alternate juror to replace an excused juror by order of selection and not by lot in violation of General Statutes § 54-82h (c).[18] To the extent that the defendant did not object at trial, he requests review under the plain error doctrine. See Practice Book § 60-5. This claim has no merit.

On the first day of jury selection, the court granted each party eight peremptory challenges. Defense coun-

---

[18] General Statutes § 54-82h (c) provides in relevant part: "If, at any time, any juror shall, for any reason, become unable to further perform the duty of a juror, the court may excuse such juror and, if any juror is so excused or dies, the court may order that an alternate juror who is designated by lot to be drawn by the clerk shall become a part of the regular panel and the trial or deliberation shall then proceed with appropriate instructions from the court as though such juror had been a member of the regular panel from the time when the trial or deliberation began. . . ."

Although the legislature made certain amendments to § 54-82h (c) that became effective after the conclusion of the defendant's trial; see Public Acts 2000, No. 00-116, §§ 6 and 7; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of § 54-82h (c).

sel exercised all eight challenges in the course of selecting the six principal jurors. The parties then selected two alternate jurors. Defense counsel did not request additional peremptory challenges and accepted both alternate jurors without objection and without challenging either juror for cause.

Prior to being sworn in, one of the six principal jurors was excused by the court due to a medical condition that prevented her from serving for the remainder of the trial. The court then informed the parties that the first alternate juror selected would replace the excused juror.[19] Thereafter, the jury was sworn in, and the presentation of the evidence began.

Practice Book § 60-5 provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial . . . . The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

In the present case, defense counsel did not object to the method of selection employed by the trial court

---

[19] When the court selected the first alternate juror to replace the excused juror, the following colloquy ensued:

"[Defense Counsel]: . . . My recollection about picking alternates was that it was by lot or by lottery. I might be wrong on that. . . . [M]y recollection was that it had to be done by lot.

"The Court: Right.

"[Defense Counsel]: I don't recall.

"The Court: I actually did not find anything that—but, so I don't know if it's a matter of just practice or—do you have anything to—we can do it that way. . . . I didn't try to find something concerning this selection of the alternates. . . . [M]y sense is that might be the practice, but it wasn't necessarily mandated.

"The Clerk: I don't—any time we've had this happen, it was always whoever the first alternate was.

"The Court: Yeah. Right.

"[Defense Counsel]: Oh, I see.

"The Court: I actually did not find anything that mandated [it]. . . .

"[Assistant State's Attorney]: . . . I have heard it done both ways. . . .

"The Court: So the first alternate that was selected, then, will be seated with the regular panel."

in replacing the excused juror with the first alternate juror. Defense counsel's "recollection" that the replacement juror should be selected by lot, his subsequent concession that his recollection "might be wrong" and his response of "Oh, I see," when the court concluded that it did not believe that selection by lot was mandated by law cannot be characterized as an objection. Defense counsel also made no further comment when the court informed the parties that the first alternate juror selected would be seated with the regular panel. We therefore conclude that defense counsel's remarks, considered in their entirety, were made in an effort to clarify the rules and that his acquiescence in the trial court's method of selecting the first alternate juror to replace the excused juror does not satisfy the Practice Book requirement that a claim be "distinctly raised at the trial" in order to qualify for appellate review. Practice Book § 60-5.

"[P]lain error review is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Under this rubric, [a]n important factor in determining whether to invoke the plain error doctrine is whether the claimed error result[ed] in an unreliable verdict or a miscarriage of justice." (Citations omitted; internal quotation marks omitted.) *State* v. *Pierce*, 269 Conn. 442, 450, 849 A.2d 375 (2004).

Even if we assume, without deciding, that § 54-82h (c) requires that an excused juror be replaced with an alternate juror designated by lot, we cannot conclude, on the basis of the record before us, that the method employed by the trial court in selecting the first alternate juror to replace the excused juror was an error so obvious that it affected "the fairness and integrity of and public confidence in the judicial proceedings" or resulted in an unreliable verdict. (Internal quotation

marks omitted.) Id. Additionally, defense counsel accepted both alternate jurors at the outset of the trial without objection and without challenging either juror for cause, and the defendant does not claim on appeal that the performance of the juror who replaced the excused juror was deficient. Accordingly, the defendant's claim is unpersuasive.[20]

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion the other justices concurred.

---

[20] We nonetheless emphasize that, if a juror is excused for any reason, the trial court is required to follow the procedures set forth in § 54-82h (c) to replace the excused juror with an alternate juror.