# STATE OF CONNECTICUT *v.* HERIBERTO M.[1]
## (AC 28795)

Flynn, C. J., and Lavine and Hennessy, Js.

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Argued April 21—officially released August 25, 2009

*Aaron J. Romano*, special public defender, for the appellant (defendant).

*Laurie N. Feldman*, special deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Brian K. Sibley, Sr.*, assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, C. J. The defendant, Heriberto M., appeals from the judgment of conviction, following a jury trial, on charges of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), sexual assault in the fourth degree in violation of General Statutes (Rev. to 1999) § 53a-73a (a) (1) (A) and risk of injury to a child in violation of General Statutes (Rev. to 1999) § 53-21 (a) (2).[2] On appeal, the defendant claims that the court improperly (1) admitted the testimony of a clinical social worker containing hearsay statements under the medical treatment exception, (2) admitted

---

[2] The defendant was charged with crimes that allegedly occurred in 1999. The codification of § 53-21 applicable to that period of time is the revision to 1999. In 2000, the legislature enacted Public Acts 2000, No. 00-207, § 6, which designated the then existing language of § 53-21 as subsection (a) and added subsection (b). The relevant language of subsection (2) of the statute with which the defendant was charged did not change.

constancy of accusation testimony and (3) provided an expert testimony charge in its instructions to the jury.[3] We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In 1999, the victim, who was six years old, lived with her mother, her brother and her mother's boyfriend, the defendant. The victim's mother worked from 6 a.m. until 3 p.m. During this time, the defendant would pick up the victim everyday after school at approximately 2:30 p.m., bring her home and stay with her until her mother returned from work.

One afternoon after returning home from school, the victim was lying on the bed and watching television in the bedroom shared by her mother and the defendant. The victim's mother was at work at the time, and no one but the victim and the defendant was home. The defendant entered the room and removed the victim's clothes. He lay down on the bed and turned the victim from her back to her side, so that he was behind her. He then lifted the victim's leg and placed his penis between her legs and into her vagina, causing her to feel pain. The defendant moved his body, rubbing her vagina with his penis. He also touched the victim's buttocks with his penis. The victim's body was "slimy" after the defendant had finished, and he told her to take a shower. After school the next day, the defendant again assaulted the victim in the same manner.

The defendant had sexual contact with the victim on various other occasions. He once touched the victim's vagina with his hands and tongue. The defendant instructed the victim not to tell anyone what he had

---

[3] Following oral argument before this court, counsel for the defendant filed a motion seeking to clarify a statement he had made during oral argument. Our rules of appellate practice do not contemplate such a motion, and we do not consider it in our disposition of the case.

done to her. The victim initially did not report the incidents to her mother or to anyone else because of the defendant's instruction. In late 1999, the victim's mother ended her relationship with the defendant and moved with her children from her residence.

In July, 2003, the victim's mother questioned the victim concerning an incident involving inappropriate sexual conduct between the victim's brother and her female cousin. The victim revealed to her mother and her mother's new boyfriend that she had been sexually assaulted by the defendant. The victim's mother reported the abuse to the New Haven police department. The victim's mother subsequently took the victim to Yale-New Haven Hospital's child sexual abuse clinic, where she was interviewed by Leah Smith, a clinical social worker. Smith possessed a master's degree in social work, was licensed by the state to practice social work, had received extensive training in forensic interviewing and had conducted approximately 300 interviews with children. The purpose of the interviews, according to Smith, was threefold: medical treatment, mental health or psychological treatment and the child's safety.

Smith conducted the interview alone with the victim while other members of a multidisciplinary team, including a police officer and Janet Murphy, a pediatric nurse practitioner, observed through a one-way mirror. The interview was videotaped according to the hospital's procedures. The victim told Smith of the defendant's abusive touching. Because, in describing the defendant's actions, the victim at various times used different terms for genitalia, Smith provided her anatomically correct drawings, upon which the victim was able to identify correctly both male and female genitalia. Smith testified as to her opinion that responses given by the victim in the interview were common in cases of sexual abuse.

Following Smith's interview, Murphy examined the victim. Murphy held an advanced practice registered nurse's license, had worked in the sexual abuse field for eighteen years and had examined approximately 2000 children. She testified that the purpose of the type of examination performed on the victim is to determine whether the child is healthy, to calm any worries the child might possess and to determine whether he or she has sustained any physical injuries or sexually transmitted diseases. Murphy found no injuries to the victim's genitals, a finding that she stated was consistent with approximately 90 percent of sexual abuse victims. The lack of injuries was consistent with the fact that the reported abuse occurred approximately three years previous to the time of the examination. An injury to the victim's hymen, for instance, may have healed due to the victim's having gone through puberty in the meantime. Furthermore, the type of touching involved was unlikely to cause injury.

Following the conclusion of the evidence, the jury found the defendant guilty of each of the three counts of the substitute information. The court thereafter sentenced the defendant to a total effective term of seventeen years imprisonment, execution suspended after twelve years, with ten years of probation. The present appeal followed. Additional facts will be provided where necessary.

I

The defendant first claims that the court improperly admitted the testimony of Smith. Specifically, he argues that the testimony did not qualify for admission under the medical treatment exception to the rule of evidence prohibiting hearsay.[4] We decline to review this claim

[4] Section 8-3 of the Connecticut Code of Evidence (2000) provides in relevant part: "The following [is] not excluded by the hearsay rule, even though the declarant is available as a witness . . . (5) . . . [a] statement made for purposes of obtaining medical treatment or advice pertaining thereto and describing medical history, or past or present symptoms, pain,

as the defendant failed to preserve this issue at trial and, on appeal, does not request any extraordinary level of review.

Prior to Smith's testimony, and outside of the presence of the jury, the court entertained argument from the prosecutor and defense counsel regarding the admissibility of Smith's testimony. The prosecutor sought to admit into evidence not only Smith's testimony regarding her interview of the victim, which included the victim's statements to Smith, but also the videotape recording of the interview. Defense counsel made no objection to admission of Smith's testimony concerning the interview, stating: "I understand from the case law that the subject matter is admissible by way of the medical exception." Defense counsel objected to the admission of the videotape, however, arguing that it would unfairly prejudice the defendant by unduly highlighting the evidence. The prosecutor indicated to the court that he and defense counsel had reached an agreement that the statements made to Smith in the interview would be admitted. The prosecutor proffered: "[W]e have an understanding that the statements themselves will be allowed under the medical exception to the hearsay rule." Defense counsel gave no indication that he disagreed with this statement, and, instead, he continued his argument that the videotape should not be admitted. While indicating that the admissibility of the videotape was a close issue, the court stated that it would allow either Smith's testimony or the videotape but not both. The prosecutor withdrew his offer of the videotape and called Smith to the witness stand. Defense counsel offered no objection to Smith's testimony.

or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to the medical diagnosis or treatment. . . ."

In maintaining that the issue properly was preserved, the defendant argues on appeal that "[f]rom the outset of the trial, the defense raised the objection to hearsay statements made by the complainant to others." The defendant further contends that the "preliminary arguments made by defense counsel properly preserved the issue raised in [the defendant's] brief that Smith's testimony did not fall within the ambit of the medical exception rule." However, defense counsel offered no objection to Smith's testimony. Indeed, he stated on the record his belief that, under the pertinent case law, the testimony was admissible by way of the medical treatment exception. Further, he offered no objection when the prosecutor told the court that the prosecutor and defense counsel had agreed previously that the hearsay portions of the testimony would be admissible pursuant to the medical treatment exception.

The record clearly demonstrates that defense counsel's real focus was preventing the separate admission of the videotape of the interview. The defendant's failure to object to the admission of Smith's testimony renders his claim unpreserved and unreviewable, except pursuant to *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error doctrine. See Practice Book § 60-5. The defendant has requested neither form of review. We therefore decline to review the claim as "it is not appropriate to engage in a level of review that is not requested. . . . When the parties have neither briefed nor argued plain error [or *Golding* review], we will not afford such review." (Internal quotation marks omitted.) *State* v. *Marsala,* 93 Conn. App. 582, 590, 889 A.2d 943, cert. denied, 278 Conn. 902, 896 A.2d 105 (2006).

## II

The defendant next challenges the admission of the testimony of both Smith and Murphy. He contends that

the testimony constituted improper constancy of accusation testimony,[5] and he argues that his right to a fair trial under the fifth and fourteenth amendments to the United States constitution and article first, §§ 8 and 9, of the Connecticut constitution was violated by its admission.

The defendant failed to raise this issue at trial, and he seeks review of his claim pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40. Under *Golding*, a defendant may prevail on an unpreserved claim only if, inter alia, the claim is of constitutional magnitude. Id., 239. In *State* v. *Samuels*, 273 Conn. 541, 558, 871 A.2d 1005 (2005), our Supreme Court held that "the interest of defendants in sexual assault cases in being protected from the prejudicial effect of postcomplaint constancy testimony is not constitutional in nature." Such a claim, therefore, does not satisfy *Golding*'s second prong. Id. Accordingly, we do not review the claim.

## III

The defendant's final claim challenges a portion of the court's jury charge on experts. He specifically maintains that the court violated his due process right to a fair trial when it provided the jury with an expert witness instruction as to both Smith and Murphy when only Murphy had been presented by the state as an expert.[6]

---

[5] Under Connecticut Code of Evidence § 6-11 (c), "[a] person to whom a sexual assault victim has reported the alleged assault may testify that the allegation was made and when it was made, provided the victim has testified to the facts of the alleged assault and to the identity of the person or persons to whom the assault was reported. Any testimony by the witness about details of the assault shall be limited to those details necessary to associate the victim's allegations with the pending charge. The testimony of the witness is admissible only to corroborate the victim's testimony and not for substantive purposes."

[6] As a preliminary matter, we note that the defendant's brief and appendix do not contain the portion of the charge he challenges on appeal. Our rules of practice require that "[w]hen error is claimed in the charge to the jury, the brief or appendix shall include a verbatim statement of all relevant portions of the charge and all relevant exceptions to the charge." Practice Book § 67-4 (d) (2). In his reply brief, the defendant appears to argue that,

As a result, the defendant argues, the court "gave undue weight to Smith's testimony." We disagree.

On direct examination by the state, although Smith testified as to her educational background, licensing and experience, the prosecutor did not offer her formally as an expert. He offered Murphy as an expert after eliciting her testimony as to her education, licensing and experience. Despite Smith's not formally having been offered as an expert, defense counsel did not object when Smith testified as to her opinion that the victim's responses during the course of their interview were consistent with those of a child who has been sexually abused.[7] In his closing argument to the jury, defense counsel referred to Smith as an expert in highlighting a portion of her testimony. On two additional occasions in his closing argument, defense counsel referred to Smith and Murphy collectively as "the experts."

In its charge to the jury, the court stated in relevant part: "In this case, certain witnesses have taken the [witness] stand, given their qualifications and testified

---

because his claim is that the court should *not* have given an expert instruction with regard to Smith, his brief was not incomplete due to its failure to include the challenged portion of the charge. We do not read Practice Book § 67-4 (d) (2) this narrowly, and we take this opportunity to remind counsel of the provision's requirements.

[7] One objection made by defense counsel during the prosecutor's direct examination of Smith indicates that he understood her to be an expert witness, though she had never formally been offered as one. The prosecutor asked Smith what recommendations she made as a result of interviewing the victim. Defense counsel objected, and outside the presence of the jury, made the following argument: "[I]f she makes any recommendations and you put that in front of the jury, she's essentially saying that sexual abuse occurred here and using the weight of her professional opinion to answer the question the jury is here to decide. 'What did you make for recommendations?' 'I recommended that she seek counseling. I recommended that—that she have one-on-one counseling to—to deal with the—sexual assault.' You are telling the jury that she's already determined that sexual assault occurred here. How—how can you talk about recommendations when essentially he's asking her whether or not there is any credence to the allegation. That's for the jury to decide."

as expert witnesses, and by that I'm including Janet Murphy and Leah Smith. A person is qualified to testify as an expert if she has special knowledge, skill, experience, training or education sufficient to qualify her as an expert on the subject to which her testimony relates. An expert is permitted not only to testify to facts that she personally observed but also to state her opinion about certain circumstances. This is allowed because an expert is, from her experience, research and study, supposed to have particular knowledge on the subject of the inquiry and be more capable than a layperson in drawing conclusions from facts and basing her opinion on them.

"Such testimony is presented to you to assist you in your deliberations. No such testimony is binding upon you, however, and you may disregard such testimony either in whole or in part. It is for you to consider the testimony with the other circumstances in the case in using your best judgment [to] determine whether you will give any weight to it and if so, what weight you will give to it. The testimony is entitled to such weight as you find the expert's qualifications in her field entitle it to receive, and it must be considered by you but is not controlling upon your judgment."

The defendant's claim is unpreserved, as he took no exception to the court's instruction at trial, and he consequently seeks review pursuant to *Golding*. The defendant's claim must fail, however, as he has not demonstrated the existence of a clear constitutional violation that clearly deprived him of a fair trial. See *State* v. *Golding*, supra, 213 Conn. 240. It is significant that defense counsel referred to Smith in the course of his closing argument to the jury on multiple occasions as an expert. Although given the opportunity to do so, defense counsel also did not object to the court's proposed jury instruction containing reference to Smith as an expert. Finally, in reviewing a challenge to a jury

charge, we must view the charge as a whole to determine whether it is reasonably possible that the jury was misled. *State* v. *Griggs*, 288 Conn. 116, 125, 951 A.2d 531 (2008). The instruction properly conveyed to the jury the law with respect to expert testimony. That is, the charge clearly explained that an expert's testimony is not binding on the jury, may be disregarded in whole or in part and is not entitled to be given any additional weight. Absent clear indication to the contrary, we presume the jury to have followed the court's instructions. See *State* v. *Ali*, 233 Conn. 403, 424, 660 A.2d 337 (1995).

No *Daubert-Porter*[8] challenge was made as to the expert testimony offered. Part of the defendant's argument rests on the lack of a declaration by the court that Smith was an expert. Although a court may decide to make such a declaration after an expert's qualifications are put on record, it is not required to do so by our rules of practice or case law. If a defendant has an objection to the testimony or expression of opinion by such a witness, he has the opportunity to make it and have the court rule on it.[9]

Furthermore, the defendant provides no case law for the proposition that underlies his claim: that if a jury

[8] See *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993); *State* v. *Porter*, 241 Conn. 57, 698 A.2d 739 (1997) (en banc), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998). In *Porter*, our Supreme Court followed the United States Supreme Court's decision in *Daubert* and "held that scientific evidence should be subjected to a flexible test, with differing factors that are applied on a case-by-case basis, to determine the reliability of the scientific evidence." (Internal quotation marks omitted.) *State* v. *West*, 274 Conn. 605, 630, 877 A.2d 787, cert. denied, 546 U.S. 1049, 126 S. Ct. 775, 163 L. Ed. 2d 601 (2005).

[9] We note that the court followed this procedure with regard to Murphy; i.e., the court did not "declare" Murphy to be an expert. Directly following Murphy's testimony concerning her professional qualifications, the prosecutor stated: "At this time, Judge, I would ask that the—Ms. Murphy be recognized as an expert witness in her field." The court responded: "Ask your questions. If [there are] objections, we'll deal with them."

instruction refers to a witness as an expert who has not been explicitly qualified as such, the instruction thereby is rendered constitutionally unsound. Nor do we find any such authority. Because the defendant has not demonstrated that a constitutional violation clearly exists that clearly deprived him of a fair trial, the defendant's claim fails under *Golding*'s third prong.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.