STATE OF CONNECTICUT *v.* HECTOR PEREZ
(AC 34557)

Beach, Bear and Peters, Js.

Argued October 18—officially released December 3, 2013

*Antigone Curis*, certified legal intern, with whom was *Alice Osedach*, assistant public defender, for the appellant (defendant).

*Sarah Hanna*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Chris A. Pelosi*, senior assistant state's attorney, for the appellee (state).

*Opinion*

PETERS, J. The principal issue in this criminal appeal is whether the trial court properly concluded that the dry firing of a handgun[1] is sufficient evidence to show

---

[1] Dry firing is the act of pulling the trigger of an unloaded gun in order to test the functionality of the gun's mechanisms without firing a shot.

its operability for the purpose of satisfying the elements of the crime of criminal possession of a firearm under General Statutes § 53a-217 (a) (1).[2] Secondarily, we must decide whether the trial court properly invited the state to reopen its case when the state neglected to qualify a witness as an expert. On both issues, we agree with the trial court's rulings and therefore affirm its judgment finding the defendant guilty as charged.

In a three count information dated October 25, 2011, the state charged the defendant, Hector Perez, with criminal possession of a firearm in violation of § 53a-217 (a) (1), carrying a pistol or revolver without a permit in violation of General Statutes § 29-35 (a),[3] and interfering with an officer in violation of General Statutes § 53a-167a.[4] The defendant entered a plea of not guilty and elected to be tried by the court on the charge of criminal possession of a firearm and by a jury on the remaining charges. Following trial, the court and the jury found the defendant guilty on all counts. The defendant has appealed from the judgment of conviction for criminal possession of a firearm.

The court reasonably could have found the following facts. On July 1, 2010, Officers Douglas Antuna and Jarrett Hunter responded to a complaint about the unauthorized presence of three Hispanic males at an apartment building in Hartford. The two officers arrived at the apartment building and they observed three men,

[2] General Statutes § 53a-217 (a) provides in relevant part: "A person is guilty of criminal possession of a firearm . . . when such person possesses a firearm . . . and (1) has [previously] been convicted of a felony . . . ."

[3] General Statutes § 29-35 (a) provides in relevant part: "No person shall carry any pistol or revolver upon his or her person, except when such person is within the dwelling house or place of business of such person, without a permit to carry the same . . . ."

[4] General Statutes § 53a-167a (a) provides in relevant part: "A person is guilty of interfering with an officer when such person obstructs, resists, hinders or endangers any peace officer . . . in the performance of such peace officer's . . . duties."

including the defendant, at the entrance. When the officers exited their vehicle, the men noticed them and entered one of the apartments. The officers left the scene and returned twice, first in an unmarked car to conduct surveillance and a second time in a police cruiser to confront the men. On the second trip, when the officers found the men again at the entrance, they quickly exited the cruiser and chased the men into the building. While pursuing the men, Officer Antuna noticed that the defendant was carrying a silver and brown handgun in his waistband. The men entered the same apartment as they had entered previously, and the officers followed. The men fled out the back of the apartment and later were detained by assisting officers who had been positioned to prevent the men from escaping. The defendant no longer was carrying a weapon at the time he was detained.

Officer Antuna subsequently obtained permission from the apartment's owner to search the premises. During the search, the officer found a .38 caliber revolver in a closet that he recognized as the silver and brown handgun previously carried by the defendant. The officer removed the ammunition from the loaded gun and dry fired it—squeezing the trigger and activating the hammer, to ensure that it was in working condition. The officer observed that the handgun was operable.

At trial, the state presented as a witness James Stephenson, a state forensic examiner specializing in firearms. He had examined the defendant's gun on October 25, 2011, sixteen months after it had been seized by the police. He found that the gun was not operable at that time due to being "gummed up by a residue in the . . . cylinder pin." He was able to restore the gun to operability by applying a small amount of common lubricant. He testified that the gun could have become inoperable at some time between the date it was collected from

the apartment and the date it was examined. During this testimony, Stephenson never testified about his credentials as an expert.

Following the testimony of Stephenson and an additional expert, the state rested. The defendant then made a motion for a judgment of acquittal and a motion for dismissal as to the charge of criminal possession of a firearm on the basis that there was insufficient evidence to establish beyond a reasonable doubt that the gun has been operable at the time the defendant allegedly possessed it. The court denied the motions. The defense then rested. At that point, the court, sua sponte, invited the state to reopen its case in order to qualify Stephenson as an expert. The court stated that it was "considering the basic precepts of our system, that is, fairness" and "doing this in fairness because . . . Stephenson has been qualified as an expert dozens of times." The court indicated that additional testimony was necessary to give a proper jury instruction on expert witness testimony. The defendant objected. The state then reopened its case and again called Stephenson as a witness, who testified as to his credentials as an expert.

In his appeal, the defendant raises two arguments. He challenges (1) the sufficiency of the evidence to establish that the defendant's gun was operable at the time of possession and (2) the propriety of the trial court's invitation to the state to reopen its case in order to qualify one of its experts. We reject both claims and affirm the judgment of the trial court.

I

The defendant first claims that the state failed to present sufficient evidence to establish the operability of his gun, a necessary element of the crime of criminal possession of a firearm. We disagree.

"In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence

in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Brown*, 299 Conn. 640, 646–47, 11 A.3d 663 (2011).

"[A]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier's] verdict of guilty. . . . Furthermore, [i]n [our] process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . [I]n responding to a claim of evidentiary insufficiency . . . we view all of the evidence, and the reasonable inferences drawable therefrom, in favor of the [trier's] verdict." (Citations omitted; internal quotation marks omitted.) *State* v. *Morelli*, 293 Conn. 147, 152–53, 976 A.2d 678 (2009).

To prove the crime of criminal possession of a firearm, the state must demonstrate, among other things, that the instrumentality in the defendant's possession was a firearm under the statutory definition. *State* v. *Sherman*, 127 Conn. App. 377, 396–97, 13 A.3d 1138 (2011). "A firearm is defined as any sawed-off shotgun,

machine gun, rifle, shotgun, pistol, revolver or other weapon, whether loaded or unloaded *from which a shot may be discharged* . . . ." (Emphasis in original; internal quotation marks omitted.) Id., 395, quoting General Statutes § 53a-3 (19). "Whether a firearm is one from which a shot may be discharged can be inferred from all of the facts and need not be established beyond a reasonable doubt by direct evidence but may be established by circumstantial evidence." *State* v. *Carpenter*, 19 Conn. App. 48, 59–60, 562 A.2d 35, cert. denied, 213 Conn. 804, 567 A.2d 834 (1989).

In this case, the fact that the responding officer dry fired the gun and observed that its firing mechanism was functional shortly after the defendant possessed it was strong evidence of its operability. Although the gun was not operable when the forensic examiner later tested it, this test did not occur until well over a year after the gun was initially seized. On the basis of the responding officer's observation of operability and the examiner's testimony that the gun could have become inoperable during that time period, the court reasonably could have found that it was operable at the time the defendant possessed it. Viewing the evidence in the light most favorable to sustaining the verdict, we conclude that the court reasonably found the state to have proven the element of operability.

## II

The defendant next claims that his due process rights were violated when the court improperly invited the state to reopen its case and qualify the forensic examiner as an expert. We disagree.

"The principles guiding a trial judge in conducting a criminal trial are well established. Due process requires that a criminal defendant be given a fair trial before an impartial judge and an unprejudiced jury in an atmosphere of judicial calm. . . . In a criminal trial, the judge is more than a mere moderator of the proceed-

ings. It is his responsibility to have the trial conducted in a manner which approaches an atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding. . . . Consistent with his neutral role, the trial judge is free to question witnesses or otherwise intervene in a case in an effort to clarify testimony and assist the jury in understanding the evidence so long as he does not appear partisan in doing so. . . . Even though a judge may take all reasonable steps necessary for the orderly progress of the trial, he must always be cautious and circumspect in his language and conduct. . . . Any claim that the trial judge crossed the line between impartiality and advocacy is subject to harmless error analysis." (Citations omitted; internal quotation marks omitted.) *State* v. *Lopes*, 78 Conn. App. 264, 274–75, 826 A.2d 1238, cert. denied, 266 Conn. 902, 832 A.2d 66 (2003).

In this case, the record reflects that Stephenson was testifying in his capacity as an expert on firearms. Defense counsel did not object when the state asked for Stephenson's opinion on the issue of operability and both parties treated Stephenson in the same way as the state's next witness, a state DNA analyst, whom the state properly qualified as an expert. Thus, when the court offered the state an opportunity to reopen the case and formally qualify Stephenson, it was not an attempt to aid the prosecution, but merely to rectify an oversight so that the jury could be properly instructed on the role of expert testimony.[5] It certainly did not amount to "tilting the balance against the accused and plac[ing] the judge . . . on the side of the prosecution." (Internal quotation marks omitted.) *State* v. *Peloso*, 109 Conn. App. 477, 492, 952 A.2d 825 (2008).

---

[5] Although Stephenson's expert testimony related exclusively to the firearm possession charge before the court, the court appears to have been under the impression that the jury would be the finder of fact for that charge as well. Any confusion in that regard was resolved, as the court ultimately decided the criminal possession charge.

This case can readily be distinguished from *State* v. *Allen*, 205 Conn. 370, 385, 533 A.2d 559 (1987), in which our Supreme Court held that a trial court judge allowing the state to reopen its case was an abuse of discretion when the state had failed to make a prima facie case and the defendant identified specific evidentiary gaps in a motion for judgment of acquittal. In the present case, in his motion for judgment of acquittal, the defendant did not point out any specific deficiencies in the state's case outside of a general statement that the evidence was insufficient to show operability and did not mention that Stephenson had not been qualified as an expert. Further, the state's failure to qualify Stephenson would not necessarily have precluded a jury instruction containing reference to Stephenson as an expert, as the defense did not object to the witness' testimony setting forth his expert opinions. See *State* v. *Heriberto M.*, 116 Conn. App. 635, 643–46, 976 A.2d 804, cert. denied, 293 Conn. 936, 981 A.2d 1080 (2009). Finally, any jury instructions as to Stephenson's status as an expert were insignificant to the conviction for criminal possession of a firearm that is challenged on appeal, as that charge was decided by the court and not the jury.

In sum, we conclude that the evidence was sufficient to support a finding that the defendant's gun was operable and that the court did not act improperly in inviting the state to reopen its case for the purpose of formally qualifying Stephenson as an expert in light of his expert testimony to which the defendant had not objected.

The judgment is affirmed.

In this opinion the other judges concurred.