Tufte, Justice.
 

 [¶ 1] D.D. appeals a district court order requiring his involuntary hospitalization and treatment, directing law enforcement to seize D.D.'s firearms, and finding that federal and state firearm restrictions applied to him. We affirm the district court's conclusion that the state and federal firearms restrictions are not unconstitutionally vague and apply to D.D. We reverse the order to seize D.D.'s firearms because neither the state nor the district court identified legal authority for issuing a summary seizure order as part of a mental health commitment process.
 

 I
 

 [¶ 2] In April 2018, Dr. Steven Hill filed an application for evaluation and emergency admission, request for transportation for emergency detention, and petition for involuntary commitment, alleging that D.D. was mentally ill and in need of emergency treatment. D.D. was admitted to the North Dakota State Hospital. After a preliminary hearing, the district court ordered involuntary hospitalization and treatment at the State Hospital for fourteen days, and found the firearm restrictions under
 
 18 U.S.C. §§ 922
 
 (d)(4), 922(g)(4), and N.D.C.C. § 62.1-02-01(1)(c) applied.
 

 [¶ 3] During the treatment hearing, D.D. testified to owning several firearms. He stated that if he was prohibited from possessing firearms, he would sell them. During closing arguments, the petitioner requested that the district court either order D.D. to provide proof of sale of his firearms before he returned to his residence or authorize the sheriff's department to enter D.D.'s home and seize the firearms. The district court found there was clear and convincing evidence that D.D. was mentally ill, a person requiring treatment, and that no alternative treatment other than hospitalization at the State Hospital was appropriate. The court ordered treatment at the State Hospital for a period not to exceed ninety days. The district court again found that the firearm possession restrictions under
 
 18 U.S.C. §§ 922
 
 (d)(4),
 
 *768
 
 922(g)(4), and N.D.C.C. § 62.1-02-01(1)(c) applied, and ordered that "[l]aw enforcement shall seize all firearms in the Respondent's possession and residence. Respondent may request return for purposes of sale only, and only by delivery of law enforcement to the selling agent."
 

 [¶ 4] On May 11, 2018, law enforcement seized about 100 firearms from D.D.'s residence. The State Hospital released D.D. three days later. In the notice of release, Dr. Pryatel explained that D.D. "no longer requires hospitalization." Upon petition, the district court ordered less restrictive treatment, allowing D.D. to participate in outpatient treatment.
 

 II
 

 [¶ 5] D.D. argues that the federal and state firearm possession restrictions are unconstitutionally vague.
 

 A
 

 [¶ 6] The petitioner claims that this constitutional issue is not properly before this Court because D.D. did not comply with N.D.R.App.P. 44. Rule 44 requires that a party questioning the constitutionality of a statute "in which the state or its agency, officer, or employee is not a party in an official capacity" must give written notice to the attorney general upon filing of the record or as soon as the question is raised. The petitioner, Dr. Hill, is a psychiatrist employed by the Northeast Human Service Center, one of eight regional human service centers within the North Dakota Department of Human Services. Dr. Hill was represented by the Grand Forks County State's Attorney's Office, and his participation in this matter was in his official capacity as a state employee acting on behalf of a state agency, as shown by letterhead on Dr. Hill's April 2, 2018, letter referenced in the petition. Because a state employee is a party to this suit in his official capacity, Rule 44 does not apply, and this issue is properly before this Court.
 

 B
 

 [¶ 7] No person shall be deprived of life, liberty, or property without due process of law. U.S. Const. amend. XIV ; N.D. Const. art. I, § 12.
 

 Stemming from this guarantee [of due process] is the concept that vague statutes are void.
 
 Connally v. Gen. Constr. Co.
 
 ,
 
 269 U.S. 385
 
 , 391,
 
 46 S.Ct. 126
 
 ,
 
 70 L.Ed. 322
 
 (1926). "[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law."
 

 Id.
 

 "Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed."
 
 United States v. Nat'l Dairy Prods. Corp.
 
 ,
 
 372 U.S. 29
 
 , 32-33,
 
 83 S.Ct. 594
 
 ,
 
 9 L.Ed.2d 561
 
 (1963). "[L]aws [must] give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning."
 
 Grayned v. City of Rockford
 
 ,
 
 408 U.S. 104
 
 , 108,
 
 92 S.Ct. 2294
 
 ,
 
 33 L.Ed.2d 222
 
 (1972). "[V]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand."
 
 United States v. Mazurie
 
 ,
 
 419 U.S. 544
 
 , 550,
 
 95 S.Ct. 710
 
 ,
 
 42 L.Ed.2d 706
 
 (1975).
 

 United States v. Washam
 
 ,
 
 312 F.3d 926
 
 , 929 (8th Cir. 2002). Under federal law, statutes must provide the person of ordinary intelligence a reasonable opportunity to know what is prohibited, and provide explicit standards to prevent arbitrary and
 
 *769
 
 discriminatory enforcement.
 
 Grayned v. City of Rockford
 
 ,
 
 408 U.S. 104
 
 , 108,
 
 92 S.Ct. 2294
 
 ,
 
 33 L.Ed.2d 222
 
 (1972). A constitutional challenge to a federal statute is reviewed de novo.
 
 Washam
 
 ,
 
 312 F.3d at 929
 
 .
 

 [¶ 8] Under
 
 18 U.S.C. § 922
 
 (d)(4), it is unlawful "for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person ... has been adjudicated as a mental defective or has been committed to any mental institution." Section 922(g)(4) provides that it is unlawful for a person "who has been adjudicated as a mental defective or who has been committed to a mental institution" to ship, transport, possess, or receive firearms or ammunition in or affecting interstate or foreign commerce. D.D. argues these laws are unconstitutionally vague because they do not provide adequate notice and they lend themselves to arbitrary enforcement.
 

 [¶ 9] D.D. argues that
 
 18 U.S.C. § 922
 
 would not provide a reasonable person under civil commitment with adequate warning that, at the moment he was committed, he would already violate the firearm possession restrictions if he had firearms in his home. This is contrary to the plain language of the two subsections at issue. Subsection 922(d)(4) prohibits selling or disposing of firearms or ammunition to a person who has been committed to a mental institution. Thus, D.D. would not violate this subsection by keeping firearms or ammunition in his home. Subsection 922(g)(4) prohibits the possession of firearms by those who have been committed to a mental institution. A person of ordinary intelligence would readily understand that § 922(g)(4) is violated by continued possession of a firearm after one has been involuntarily committed.
 

 [¶ 10] D.D. contends that § 922(g)(4) is vague as to what type of possession (actual or constructive) is required by the committed individual. The U.S. Supreme Court, however, has defined possession under
 
 18 U.S.C. § 922
 
 (g) :
 

 Section 922(g) proscribes possession alone, but covers possession in every form. By its terms, § 922(g) does not prohibit a felon from owning firearms. Rather, it interferes with a single incident of ownership-one of the proverbial sticks in the bundle of property rights-by preventing the felon from knowingly
 
 possessing
 
 his (or another person's) guns. But that stick is a thick one, encompassing what the criminal law recognizes as "actual" and "constructive" possession alike. Actual possession exists when a person has direct physical control over a thing. Constructive possession is established when a person, though lacking such physical custody, still has the power and intent to exercise control over the object. Section 922(g) thus prevents a felon not only from holding his firearms himself but also from maintaining control over those guns in the hands of others.
 

 Henderson v. United States
 
 , --- U.S. ----,
 
 135 S.Ct. 1780
 
 , 1784,
 
 191 L.Ed.2d 874
 
 (2015) (citations omitted). D.D. testified that he owned firearms and that they were stored in his home. Thus, D.D. was in constructive possession of firearms. A person of ordinary intelligence would know that his constructive possession of firearms would violate § 922(g)(4) if he had at any point been committed to a mental institution. Subsections 922(d)(4) and 922(g)(4) provided D.D. with adequate and fair warning.
 

 [¶ 11] D.D. argues that subsections 922(d)(4) and 922(g)(4) lend themselves to arbitrary enforcement because they contain no guidelines for an officer, judge, or
 
 *770
 
 jury to follow. The plain language of the statute is clear. The two subsections specifically apply to anyone who has been "committed to a mental institution." What constitutes possession and whether one has been committed and whether the facility is a mental institution are objective criteria providing fair warning to those who may fall within its scope. Both 922(d)(4) and (g)(4) provide standards for an officer, judge, or jury charged with enforcing the law to follow and thus are not unconstitutionally vague.
 

 C
 

 [¶ 12] In addition to challenging the federal firearm restrictions, D.D. argues a state firearm possession restriction is similarly vague in violation of the North Dakota Constitution. Our standard of review and analysis of vagueness claims is similar to federal law:
 

 Whether a law is unconstitutional is a question of law, which is fully reviewable on appeal.
 
 State v. Holbach
 
 ,
 
 2009 ND 37
 
 , ¶ 23,
 
 763 N.W.2d 761
 
 . A law is not unconstitutionally vague if: (1) the law creates minimum guidelines for the reasonable police officer, judge, or jury charged with enforcing the law, and (2) the law provides a reasonable person with adequate and fair warning of the prohibited conduct.
 
 State v. Brown
 
 ,
 
 2009 ND 150
 
 , ¶ 33,
 
 771 N.W.2d 267
 
 . A law is "not unconstitutionally vague 'if the challenged language, when measured by common understanding and practice, gives adequate warning of the conduct proscribed and marks boundaries sufficiently distinct for fair administration of the law.' "
 
 Holbach
 
 , at ¶ 24 (quoting
 
 In re Disciplinary Action Against McGuire
 
 ,
 
 2004 ND 171
 
 , ¶ 19,
 
 685 N.W.2d 748
 
 ).
 

 State v. Ness
 
 ,
 
 2009 ND 182
 
 , ¶ 6,
 
 774 N.W.2d 254
 
 .
 

 [¶ 13] In North Dakota, "[t]o have standing to raise a vagueness challenge, a litigant must almost always demonstrate that the statute in question is vague as applied to his own conduct, without regard to its potentially vague application in other circumstances."
 
 State v. Tibor
 
 ,
 
 373 N.W.2d 877
 
 , 880 (N.D. 1985) ;
 
 City of Fargo v. Windmill, Inc.
 
 ,
 
 350 N.W.2d 32
 
 , 36 (N.D. 1984) ("One to whose conduct a statute clearly applies may not successfully challenge it for vagueness."). Our standing doctrine acts as a gatekeeping function:
 

 The question of standing focuses upon whether the litigant is entitled to have the court decide the merits of the dispute. It is founded in concern about the proper-and properly limited-role of the courts in a democratic society. Without the limitation of the standing requirements, the courts would be called upon to decide purely abstract questions. As an aspect of justiciability, the standing requirement focuses upon whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to justify exercise of the court's remedial powers on his behalf.
 

 State v. Carpenter
 
 ,
 
 301 N.W.2d 106
 
 , 107 (N.D. 1980) (citation omitted). Although D.D. has a personal stake in the outcome of this case, it is less clear whether he has standing on the issue of vagueness as described in
 
 Tibor
 
 and
 
 Ness
 
 . To have standing to raise vagueness, D.D. must demonstrate that North Dakota's firearm possession restriction is vague in application to his conduct.
 

 [¶ 14] Under N.D.C.C. § 62.1-02-01(1)(c), "[a] person who is or has ever been diagnosed and confined or committed to a hospital or other institution in this state ... is prohibited from purchasing a firearm or having one in possession or under control." D.D. argues this law is unconstitutionally vague because it lends itself to arbitrary
 
 *771
 
 enforcement and did not provide him with adequate notice. We disagree. The plain language of § 62.1-02-01(1)(c) prohibits individuals who have been involuntarily committed from purchasing, possessing, or controlling a firearm. The law both provides guidelines for an officer, judge, or jury charged with enforcing the law to follow, and adequate and fair warning of this prohibited conduct.
 

 [¶ 15] D.D. contends that § 62.1-02-01(1)(c) is vague as to what type of possession is required by the committed individual. Possession of a firearm by a prohibited possessor is akin to illegally possessing a controlled substance or other contraband. Under those circumstances, either actual or constructive possession meets the requirement of possession.
 
 See
 

 State v. Connery
 
 ,
 
 441 N.W.2d 651
 
 , 655 (N.D. 1989) ;
 
 State v. Morris
 
 ,
 
 331 N.W.2d 48
 
 , 53 (N.D. 1983). As discussed in Part II.B., D.D. was in constructive possession of firearms by owning firearms kept in his house. A reasonable person would know that even when away from home, such circumstances constitute possession and would violate § 62.1-02-01(1)(c) if he had ever been committed to a hospital by a court. The order on appeal expressly "committed the respondent" to the state hospital. As applied to D.D.'s own conduct, the statute is not vague. Because D.D. cannot demonstrate that § 62.1-02-01(1)(c) is vague as to his conduct, he lacks standing to argue whether the statute may be vague in other applications.
 
 See
 

 Tibor
 
 ,
 
 373 N.W.2d at 880-81
 
 .
 

 III
 

 [¶ 16] D.D. argues that the district court lacked authority to seize his firearms and ammunition pursuant to an order for involuntary hospitalization. At the treatment hearing, the state asked the court to include in its treatment order an order seizing D.D.'s numerous firearms to avoid potential criminal charges for unlawful possession of firearms upon D.D.'s release. The petitioner cited no authority for its requested seizure, acknowledging that "the state law as well as the federal law does not have an enforcement component." D.D.'s attorney objected to the petitioner's request for an order seizing the firearms: "I don't know of any statutory authority within a civil commitment proceeding for the court to order that the weapons be seized. If he's returning home, and law enforcement is there when he returns home, and he still has the weapons, then he would be in violation of federal law and if he did not turn them over it should be addressed at that time."
 

 [¶ 17] In its order, the district court cited no statutory authority by which it was authorized to order seizure of the items. The petitioner argues on appeal that
 
 18 U.S.C. § 924
 
 (d)(1) gives the district court authority to seize the items. Title
 
 18 U.S.C. § 924
 
 (d)(1) provides, "Any firearm or ammunition involved in or used in any knowing violation of subsection ... (g) ... of section 922... or any violation of any other criminal law of the United States ... shall be subject to seizure and forfeiture...." Assuming without deciding that this federal statute would provide seizure authority to a state official in a state court mental health proceeding, the district court made no finding that § 924(d)(1) applied to D.D. and did not seize the firearms under authority of that statute. On this record it does not appear that there is a predicate "violation" of section 922(g) in that it does not appear that D.D. was ever charged with or convicted of violating section 922(g).
 

 [¶ 18] The petitioner argues, alternatively, that seizure from the district court resulted in harmless error because the firearms and ammunition would have been seized eventually because D.D. violated the firearm restrictions upon entry of the commitment order. It is not clear that a factual
 
 *772
 
 finding that an offense could be charged is sufficient to satisfy the § 924(d)(1) requirement that there be a violation before there is authority to seize firearms. The district court here did not make that determination.
 

 [¶ 19] The district court identified no authority by which it could order seizure of D.D.'s firearms in a mental health commitment proceeding. We have been provided no authority on appeal that would support the process by which the seizure was ordered. The district court acted at the request of the petitioner and with laudable intent to protect both D.D. and the public. But if a seizure of D.D.'s firearms is to be sustained, it must be pursuant to the procedures required for seizure of forfeitable property under N.D.C.C. § 29-31.1-03 or other legal authority. We reverse the order to seize D.D.'s firearms, and remand to the district court for further proceedings consistent with this opinion.
 

 IV
 

 [¶ 20] We affirm the district court's application of the federal and state firearm restrictions to D.D., concluding the statutes are not vague. We reverse the order to seize D.D.'s firearms and ammunition because the district court lacked statutory authority to order the seizure in this proceeding, and remand to the district court for further proceedings consistent with this opinion.
 

 [¶ 21] Jerod E. Tufte
 

 Daniel J. Crothers
 

 Lisa Fair McEvers
 

 Jon J. Jensen
 

 I concur in the result. Gerald W. VandeWalle, C.J.