# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2024 ND 164

State of North Dakota,                                    Plaintiff and Appellee

v.

Christapher Branden Enriquez,                    Defendant and Appellant

### No. 20240087

Appeal from the District Court of Ward County, North Central Judicial District, the Honorable Douglas L. Mattson, Judge.

REVERSED.

Opinion of the Court by Bahr, Justice.

Tiffany M. Sorgen, Assistant State's Attorney, Minot, ND, for plaintiff and appellee; submitted on brief.

Rina Morales-Holmes, Minot, ND, for defendant and appellant; submitted on brief.

**Bahr, Justice.**

[¶1]    Christapher Enriquez appeals a district court's order revoking his probation. We hold the district court's finding Enriquez possessed a firearm or dangerous weapon in violation of his probation is clearly erroneous. We further hold the court abused its discretion by revoking Enriquez's probation. We reverse.

I

[¶2]    Enriquez pled guilty to possession of a controlled substance with intent to deliver or manufacture, a class B felony. Enriquez's sentence included probation. One condition of Enriquez's probation was he "not possess a firearm, destructive device or other dangerous weapon."

[¶3]    While Enriquez was on probation, federal officers from the Drug Enforcement Administration (DEA) executed a federal search warrant on his home. During the search, the federal officers purportedly found a handgun, fentanyl pills, and methamphetamine. A DEA agent texted Enriquez's probation officer a picture "that had the handgun and the narcotics[.]"

[¶4]    The State filed a petition to revoke Enriquez's probation on three grounds: possession of a handgun; possession of fentanyl; and possession of methamphetamine. At the probation revocation hearing, the State presented testimony from Enriquez's probation officer; no other witnesses testified. Addressing the first allegation, the probation officer testified he received a picture of the handgun:

> Q All right. Okay. And were you provided documentation from the Department of Justice with—from DEA with regards to this search?
> A So when the search was happening, I was initially sent a picture that had the handgun and the narcotics and—
>
> . . . [Objection overruled] . . .
>
> Q Okay. You were saying?
> A I was sent a text message of a picture with the evidence that was found during the search and I was sent a report from Special Agent Uler (ph.) with the DEA.

The probation officer further testified the address of the search was the address on file for Enriquez. On cross-examination, the probation officer testified he did not know where in the house the federal officers found the handgun. He further testified he did not know whether the handgun was functional.

[¶5]    The State did not introduce the firearm or the picture of the firearm. The probation officer testified he received a report from a DEA agent; he did not testify about the substance of the report and the State did not introduce the report.

[¶6]    At the end of the hearing, the district court held the State did not prove Enriquez possessed fentanyl or methamphetamine. The court held the State proved by a preponderance of the evidence Enriquez possessed a handgun, which was a firearm or dangerous weapon. The court revoked Enriquez's probation and resentenced him. *See State v. Hager*, 2010 ND 217, ¶ 8, 790 N.W.2d 745 ("[T]he State need show only a single violation to sustain revocation of probation[.]" (quoting *State v. Jacobsen*, 2008 ND 52, ¶ 15, 746 N.W.2d 405)).

## II

[¶7]    "If an alleged probation violation is contested, the prosecution must establish the violation by a preponderance of the evidence." *State v. Hatzenbuehler*, 2023 ND 192, ¶ 6, 996 N.W.2d 649. "We apply a two-step analysis in reviewing a probation revocation. '[W]e first review the district court's factual findings under the clearly erroneous standard and then review the court's decision to revoke probation under the abuse-of-discretion standard.'" *Id.* (quoting *State v. Dockter*, 2019 ND 203, ¶ 11, 932 N.W.2d 98) (internal citation omitted). "Findings of fact are adequate if they provide this Court with an understanding of the district court's factual basis used in reaching its determination." *Id.* (quoting *State v. Bergstrom*, 2006 ND 45, ¶ 15, 710 N.W.2d 407). "A finding of fact is clearly erroneous if, although there may be some evidence to support it, the reviewing court on the entire evidence, is left with a definite and firm conviction a mistake has been made." *Id.* (quoting *State v. Ballweg*, 2003 ND 153, ¶ 14, 670 N.W.2d 490). "A court abuses its discretion if it acts in an arbitrary, unreasonable, unconscionable, or capricious manner, if its decision is not the product of a rational mental process leading to a reasoned determination, or if it misinterprets or misapplies the law." *State v. Dockter*, 2019 ND 203, ¶ 11, 932 N.W.2d 98.

[¶8]    "Revocation of probation is not a stage of a criminal prosecution, and therefore the same rights and standards do not apply." *State v. Wetzel*, 2011 ND 218, ¶ 14, 806 N.W.2d 193. "The Rules of Evidence do not apply in probation revocation proceedings." *Id.*; *see also* N.D.R.Ev. 1101(d)(3)(E). "Hearsay evidence is admissible at probation revocation hearings." *State v. McAvoy*, 2008 ND 204, ¶ 11, 757 N.W.2d 394.

A

[¶9]    Enriquez argues the district court erred when it found he possessed a firearm or dangerous weapon.

1

[¶10]  Enriquez argues the State did not prove he possessed the handgun.

[¶11]  "Possession may be 'actual or constructive, exclusive or joint and may be shown entirely by circumstantial evidence.'" *State v. Wiese*, 2024 ND 39, ¶ 11, 4 N.W.3d 242 (quoting *State v. Christian*, 2011 ND 56, ¶ 11, 795 N.W.2d 702). "Constructive possession is proven where evidence 'establishes that the accused had the power and capability to exercise dominion and control over the [item].'" *Id.* (quoting *Christian*, ¶ 11). Constructive possession "can be inferred from the totality of circumstances associated with a particular case." *State v. Dymowski*, 458 N.W.2d 490, 500 (N.D. 1990). Some "circumstances which may support an inference of constructive possession are an accused's presence in the place where [the item] is found, his proximity to the place where it is found, and the fact that the [item] is found in plain view." *State v. Dahl*, 2022 ND 212, ¶ 6, 982 N.W.2d 580 (quoting *State v. Demarais*, 2009 ND 143, ¶ 8, 770 N.W.2d 246). Of course, the identified factors are "not intended to be an all-inclusive list. As mentioned, constructive possession can be inferred from the totality of the circumstances." *Dymowski*, 458 N.W.2d at 500.

[¶12]  Here, the probation officer testified the address of the search was the address on file for Enriquez. He also testified Enriquez was present when the federal officers executed the search warrant, but that he does not know where in the house the handgun was found. On cross-examination, the probation officer acknowledged "there was another person at his residence as well[.]" It is not clear from the record whether the other person lived at Enriquez's residence or was simply present when the search warrant was executed. Thus, the essence of the State's evidence is the federal officers located a handgun at Enriquez's residence while Enriquez was at the residence.

[¶13] In *Dymowski,* we noted other jurisdictions have recognized "the presence of a controlled substance on a person's premises is relevant evidence of possession of the substance." 458 N.W.2d at 500. "Possession of a firearm by a prohibited possessor is akin to illegally possessing a controlled substance or other contraband." *In Int. of D.D.*, 2018 ND 201, ¶ 15, 916 N.W.2d 765. "It is well established that, ordinarily, when narcotics or contraband materials are found on a defendant's premises, the evidence of unlawful possession is deemed sufficient to sustain a conviction in the absence of any other reasonable explanation for its presence." *State v. Brennen,* 356 N.W.2d 861, 865 (Neb. 1984); *see also United States v. Morris*, 977 F.2d 617, 620 (D.C. Cir. 1992) ("A jury is entitled to infer that a person exercises constructive possession over items found in his home."); *Moore v. United States*, 927 A.2d 1040, 1050 (D.C. 2007) ("Evidence showing the accused's control or occupancy of the premises in which the contraband is found may also serve to prove constructive possession."); *Johnson v. United States*, 290 A.3d 500, 516 (D.C. 2023) ("When illicit items have been discovered in the accused's own home, a jury usually may infer that the accused had the requisite knowledge, dominion and control of them."); *State v. Lattin*, 256 So. 3d 484, 489 (La. Ct. App. 2018) ("Courts have generally found evidence of constructive possession when a gun is found in an area customarily occupied by the defendant."); *cf. Morris*, 977 F.2d at 620 ("The inference that a person who occupies an apartment has dominion and control over its contents applies even when that person shares the premises with others[.]").

[¶14] The federal officers found the handgun at Enriquez's residence while he was present. The district court could reasonably infer Enriquez had control over his residence, and thus the handgun. *McAvoy*, 2008 ND 204, ¶¶ 12-13 (affirming probation revocation after noting reasonable inferences the district court could make based on the evidence).

[¶15] We conclude the district court's finding Enriquez possessed the handgun is not clearly erroneous because there is some evidence to support it and we are not left with a definite and firm conviction a mistake has been made.

2

[¶16] Enriquez argues the State did not prove the handgun was functional. Specifically, Enriquez argues there was no "testimony that the firearm was capable of expelling a projectile or was functional in any regard."

[¶17] Although not cited in his brief, Enriquez's argument appears to be based on the definitions of "dangerous weapon" and "firearm" in N.D.C.C. § 12.1-01-04(6) and (9). Our standard of review for interpreting a criminal statute is well established:

Construction of a criminal statute is a question of law, fully reviewable by this Court. Our primary goal in interpreting statutes is to ascertain the Legislature's intentions. In ascertaining legislative intent, we first look to the statutory language and give the language its plain, ordinary and commonly understood meaning. We interpret statutes to give meaning and effect to every word, phrase, and sentence, and do not adopt a construction which would render part of the statute mere surplusage. When a statute's language is ambiguous because it is susceptible to differing but rational meanings, we may consider extrinsic aids, including legislative history, along with the language of the statute, to ascertain the Legislature's intent. We construe ambiguous criminal statutes against the government and in favor of the defendant.

*State v. Vetter*, 2013 ND 4, ¶ 11, 826 N.W.2d 334 (quoting *State v. Buchholz*, 2005 ND 30, ¶ 6, 692 N.W.2d 105).

[¶18] Section 12.1-01-04(6), N.D.C.C., provides a "dangerous weapon" includes "any weapon that *will expel, or is readily capable of expelling,* a projectile by the action of a spring, compressed air, or compressed gas including any such weapon, loaded or unloaded, commonly referred to as a BB gun, air rifle, or CO2 gun[.]" (Emphasis added.) Under section 12.1-01-04(9), a "'[f]irearm' means any weapon that *will expel, or is readily capable of expelling,* a projectile by the action of an explosive and includes any such weapon, loaded or unloaded, commonly referred to as a pistol, revolver, rifle, gun, machine gun, shotgun, bazooka, or cannon." (Emphasis added.) The definitions in section 12.1-01-04 apply to Title 12.1 "unless a different meaning plainly is required." N.D.C.C. § 12.1-01-04. Section 12.1-32-07(3), N.D.C.C., provides, in relevant part, "The court shall provide as an explicit condition of every probation that the defendant may not possess a firearm, destructive device, or other dangerous weapon while the defendant is on probation." Thus, the definitions of "dangerous weapon" and "firearm" in section 12.1-01-04(6) and (9) apply to the probation condition Enriquez not possess a firearm or dangerous weapon.

[¶19] In finding Enriquez possessed a dangerous weapon or firearm, the district court cited to *State v. Clinkscales*, 536 N.W.2d 661 (N.D. 1995), for the proposition the State did not need to prove the firearm was functional. The court's reliance on *Clinkscales* under the facts of this case is misplaced.

[¶20]   In *Clinkscales,* Clinkscales committed a robbery at a convenience store "with a BB gun resembling a 9mm semiautomatic pistol[.]" 536 N.W.2d at 663. During the robbery he placed the BB gun into the store clerk's back. *Id.* At trial the store clerk "testified that he feared for his life when Clinkscales had the gun pressed into his back." *Id.* at 665. Clinkscales was convicted of armed robbery. *Id* at 663. On appeal Clinkscales argued "the State did not prove the BB gun was 'readily capable of expelling a projectile.'" *Id.* at 664. This Court affirmed the conviction. *Id.* at 666. In doing so, we noted an element of Class B felony robbery was willfully threatening or menacing another with serious bodily harm. *Id.* at 664. Based on that element of the charge, the jury instruction defined "dangerous weapon" to include "a weapon, the possession of which under the circumstances indicates an intent or readiness to inflict serious bodily injury." *Id.* We noted the store clerk "did not know the gun was unloaded, or whether it was capable of expulsion; however, he obviously believed that it was." *Id.* at 665. We wrote, "A person who uses an unloaded or toy weapon during a robbery is subject to an aggravated penalty because of the 'heightened fear' the presence of a weapon creates in the victim." *Id.* Thus, "whether capable of expulsion or not," the defendant used the BB gun under circumstances indicating "an intent or readiness to inflict serious bodily injury." *Id.*

[¶21]   Unlike Clinkscales, Enriquez is not charged with armed robbery. Thus, the issue is not whether Enriquez used the handgun under circumstances indicating an intent or readiness to inflict serious bodily injury; the issue is whether the handgun, which the district court found Enriquez constructively possessed, is a "dangerous weapon" or "firearm" as defined in N.D.C.C. § 12.1-01-04(6) and (9). We hold the district court misapplied the law when it applied *Clinkscales* to this case. However, this Court can still affirm the court if it reached the right result. *State v. Lafromboise,* 2021 ND 80, ¶ 20, 959 N.W.2d 596 ("This Court long has embraced the rule that the district court's result will be affirmed if it is right for the wrong reason.")

[¶22]   The statutory definitions of a "dangerous weapon" and "firearm" in N.D.C.C. § 12.1-01-04(6) and (9) are plain and unambiguous. For purposes of this case, both definitions require one of two alternative levels of functionality. The first functionality is that the weapon "will expel" a projectile. The second functionality is that the weapon is "readily capable of expelling" a projectile. The language in section 12.1-01-04(9) that a "firearm" "includes any such weapon, loaded or unloaded, commonly referred to as a pistol [or] revolver" clarifies but does not expand the definition of "firearm." The word "such" is a demonstrative adjective used to indicate the type or character previously indicated. *See*

Merriam-Webster's Collegiate Dictionary 1247 (11th ed. 2005); The Random House Dictionary of the English Language 1899-1900 (2nd ed. 1987); *such*, Black's Law Dictionary 1738 (12th ed. 2024); A Dictionary of Modern Legal Usage 849 (2nd ed. 1995). Thus, a pistol or revolver must be the type of weapon that "will expel" a projectile or is "readily capable of expelling" a projectile to meet the definition of "firearm" in section 12.1-01-04(9).

[¶23]  In *State v. Murphy*, 551 N.E.2d 932, 934 (Ohio 1990), the Ohio Supreme Court interpreted the term "firearm" as defined in Ohio Rev. Code Ann. § 2923.11(B). Section 2923.11(B) defined "firearm" as "any deadly weapon *capable of expelling or propelling* one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm which is inoperable but which *can readily be rendered operable*." *Id.* at 934 (quoting R.C. 2929.71 codified as amended R.C. 2923.11(B) (emphasis added)). The court explained: "The foregoing definition includes loaded as well as unloaded guns. It also includes operable guns, as well as inoperable guns that can readily be rendered operable." *Id.* Thus, the court concluded, the state must present evidence meeting its burden of proof "that the firearm was operable, or could readily have been rendered operable, at the time of the offense." *Id.* at 935. Similarly, under N.D.C.C. § 12.1-01-04(9), to meet its burden of proof in the probation revocation proceedings, the State was required to prove by a preponderance of the evidence that the handgun was able to "expel" or "readily capable of expelling" a projectile at the time Enriquez possessed it.

[¶24]  In *Murphy*, the Ohio Supreme Court addressed "the type of evidence" required for the state to prove a device is a firearm. 551 N.E.2d at 934. Specifically, the court determined whether the state can prove a weapon is a firearm, meaning it was operable or could readily have been rendered operable, "without actually presenting scientific or direct evidence as to the operability of the firearm." The court held "the state can rely upon all of the surrounding facts and circumstances" in meeting its burden of proof. *Id.* Although the state must prove "the firearm was operable, or could readily have been rendered operable, at the time of the offense," such proof "can be established . . . by the testimony of lay witnesses who were in a position to observe the instrument" and relevant circumstances. *Id.* at 935. The court held "proof of the existence of a firearm may be based on lay testimony, and is not dependent on an empirical analysis of the gun." *Id.*; *see also State v. Thaler*, 152 N.E.3d 933, 940 (Ohio Ct. App. 2020) ("Operability may be inferred from all of the relevant facts and circumstances."); *State v. Perez*, 146 Conn. App. 844, 850, 79 A.3d 149, 153 (Conn. App. 2013) ("Whether a firearm is one from which a shot may be

discharged can be inferred from all of the facts and need not be established beyond a reasonable doubt by direct evidence but may be established by circumstantial evidence." (quoting *State v. Carpenter,* 562 A.2d 35 (Conn. App. 1989)). We conclude the State can rely on the surrounding facts and circumstances, including testimony from lay witnesses, to prove a weapon is a "dangerous weapon" or "firearm" as defined in N.D.C.C. § 12.1-01-04(6) and (9).

[¶25]  At the revocation proceeding, the State had the burden to prove by a preponderance of the evidence that Enriquez possessed a handgun that was able to "expel" or "readily capable of expelling" a projectile. When considering the entire record, as previously determined, there is testimony Enriquez had constructive possession of the handgun. However, there is no evidence the handgun was able to "expel" or "readily capable of expelling" a projectile. The probation officer did not observe the handgun. Although the probation officer testified he saw a picture of the handgun, he did not testify regarding the condition of the pictured handgun, including whether it appeared capable of or readily capable of expelling a projectile. He also did not testify the DEA agent informed him, through text, the report, or otherwise, that the handgun was or appeared capable of or readily capable of expelling a projectile. The State pointed to no evidence in the record regarding the handgun being capable of or readily capable of expelling a projectile. Moreover, the district court did not find the handgun was capable of or "readily capable of expelling" a projectile. Rather, it incorrectly relied on *Clinkscales* in concluding Enriquez possessed a firearm or dangerous weapon.

[¶26]  An inference the handgun can expel a projectile because it was designed to expel a projectile is inconsistent with the term "firearm" as defined in N.D.C.C. § 12.1-01-04(9). Unlike North Dakota, some jurisdictions broadly define "firearm" to include a weapon "designed" to expel a projectile. *See, e.g.*, 18 U.S.C. § 921(3); Ariz. Rev. Stat. Ann. § 13-3101(4) (2019) (but "does not include a firearm in permanently inoperable condition"); Ark. Code Ann. § 5-1-102(6)(A) (2021); Cal. Penal Code § 16520(a) (West 2024); D.C. Code § 7-2501.01(9) (2023) (specifically states "regardless of operability"); Fla. Stat. § 790.001(9) (2023); 430 Ill. Comp. Stat. 65/1.1 (2023); Ind. Code § 35-47-1-5 (2008); Iowa Code § 683.1(1)(b) (2024); Me. Stat. tit. 17-A, § 2(12-A) (2020); Mich. Comp. Laws § 750.222(e) (2015); Minn. Stat. § 609.669, subd. 2(1); Neb. Rev. Stat. § 28-1201(3) (2024); Nev. Rev. Stat. § 202.253(3) (2023); N.H. Rev. Stat. Ann. § 173-B:1(XI) (2018); Tex. Penal Code Ann. § 46.01(3) (West 2021); Va. Code Ann. § 18.2-308.2:2(F) (2023).

A weapon "designed" to expel a projectile is a different level of functionality than a weapon that "will expel" a projectile or is "readily capable of expelling" a projectile.

[¶27]   In *Moore v. State*, 34 A.3d 513, 519 (Md. 2011), the court explained Maryland's definition of "firearm" has "three distinct levels of functionality under which a firearm may fall." *Id.* The first is a weapon that expels a projectile, indicating the weapon is "presently operable." *Id.* at 519-20. The second is a weapon "designed to" expel a projectile, which may include "inoperable, albeit designed to be operable, firearms." *Id.* at 520. The third level of functionality is a weapon that "may readily be converted to expel a projectile," meaning the "firearm may be inoperable, although readily converted." *Id.*; *see also State v. Gibbs*, 769 N.E.2d 594, 596–97 (Ind. Ct. App. 2002) (concluding "firearm" defined as "any weapon that is capable of or designed to or that may readily be converted to expel a projectile by means of an explosion" includes an inoperable handgun because it "was designed to expel projectiles by means of an explosion"); *Gerdes v. State*, 319 N.W.2d 710, 711-12 (Minn. 1982) (rejecting the argument "possession of an inoperable short-barreled shotgun is not illegal" because "[t]he statute only addresses the original design of the weapon"); *State v. King*, 674 S.W.3d 218, 231 (Mo. Ct. App. 2023) (concluding under the plain language of statutes using term "designed" to be fired or to expel a projectile, "an inoperable or malfunctioning weapon constitutes a firearm as long as it was designed to expel a projectile by the action of an explosive, regardless of whether the weapon can do so successfully").

[¶28] North Dakota's statutory definition of firearm is narrower than the statutory definition in Maryland and other jurisdictions which define "firearm" to include a weapon "designed" to expel a projectile. Under North Dakota's statutory definition, a handgun is not a "firearm" because it was "designed to" expel a projectile; it must be able to or readily capable of expelling the projectile. N.D.C.C. § 12.1-01-04(9); s*ee also In re J.T.*, 39 N.E.3d 1240 (Ohio 2014) (concluding under Ohio law, despite being designed as a deadly weapon, an inoperable handgun's "essence as a deadly weapon ended when it became inoperable"). Thus, that a handgun was designed to expel a projectile is insufficient evidence to prove a handgun is a "firearm" as defined in N.D.C.C. § 12.1-01-04(9).

[¶29]   There is no evidence in the record indicating the handgun was able to or "readily capable of expelling" a projectile, or from which the district court could infer the handgun was able to or "readily capable of expelling" a projectile. The district court also did not find the handgun was able to or "readily capable of expelling" a projectile. Based on the

court's specific findings and the evidence in the record, we conclude the district court's finding Enriquez possessed a "dangerous weapon" or "firearm" is clearly erroneous.

B

[¶30] Enriquez argues the district court abused its discretion in revoking his probation.

[¶31] The district court revoked Enriquez's probation because it found he violated the condition of probation that he not possess a firearm or other dangerous weapon. We concluded the district court's finding Enriquez possessed a dangerous weapon or firearm is clearly erroneous. Thus, the court did not have ground to revoke Enriquez's probation.

[¶32] We conclude the district court abused its discretion in revoking Enriquez's probation.

III

[¶33] The district court's finding Enriquez possessed a dangerous weapon in violation of his probation is clearly erroneous, and the court abused its discretion when it revoked Enriquez's probation. We reverse.

[¶34]    Jon J. Jensen, C.J.
         Daniel J. Crothers
         Lisa Fair McEvers
         Jerod E. Tufte
         Douglas A. Bahr